07-0037-cv
Selevan v. New York Thruway Authority

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

August Term, 2008

(Argued: September 8, 2008                    Decided: October 15, 2009)

Docket No. 07-0037-cv

ROBERT SELEVAN, individually and on behalf of all others similarly situated, and ANNE RUBIN, individually and on behalf of all others similarly situated,

     *Plaintiffs-Appellants*,

     v.

NEW YORK THRUWAY AUTHORITY, and JOHN L. BUONO, individually and as Chief Executive and Chairman of the New York Thruway Authority,

     *Defendants-Appellees*.

Before: CABRANES, POOLER, and KATZMANN, *Circuit Judges*.

Appeal from an order of the United States District Court for the Northern District of New York (Gary L. Sharpe, *Judge*) entered January 18, 2007 granting defendants-appellees' motion to dismiss for lack of standing and failure to state a claim upon which relief can be granted. Plaintiffs challenge a toll policy of the New York Thruway Authority that affords a discount to residents of a particular city in New York and denies the same benefit to all other New Yorkers and to all non-residents of New York. We hold that (1) plaintiffs have established standing to sue under Article III of the United States Constitution; (2) plaintiffs are proper parties to allege a violation of the dormant Commerce Clause under the Supreme Court's "prudential standing" doctrine; (3) defendants have not established that the New York Thruway Authority, in setting the toll, acted as a "market

1

participant" and not as a governmental entity regulating interstate commerce; (4) plaintiffs have stated a claim under the dormant Commerce Clause; (5) plaintiffs have alleged an infringement of their right to travel in violation of the Equal Protection Clause and the Privileges and Immunities Clause of the Fourteenth Amendment; (6) plaintiffs' "dormant Commerce Clause" and right-to-travel claims must be analyzed under the three-factor test set forth by the Supreme Court in *Northwest Airlines, Inc. v. County of Kent*, 510 U.S. 355, 369 (1994); and (7) the District Court properly dismissed a challenge by a U.S. citizen residing in Canada to the toll policy under the Privileges and Immunities Clause of Article IV.

Affirmed in part, vacated in part, and remanded.

> SETH R. LESSER (Andrew P. Bell, *on the brief*), Locks Law Firm PLLC, New York, NY, *for Robert Selvan and Anne Rubin.*
>
> BENJAMIN GUTMAN (Andrew M. Cuomo, Attorney General of the State of New York, Barbara D. Underwood, Solicitor General, Peter H. Schiff, Senior Counsel, Robert M. Goldfarb, Assistant Solicitor General, *on the brief*), Office of the Attorney General of the State of New York, Albany, NY, *for New York Thruway Authority and John L. Buono.*

JOSÉ A. CABRANES, *Circuit Judge*:

In this appeal we consider whether plaintiffs, who challenge an interstate highway toll policy that affords a discount to residents of a particular New York municipality, have stated claims under several provisions of the United States Constitution.

Plaintiffs-appellants Robert Selevan and Anne Rubin (collectively, "plaintiffs"), who are citizens of the United States residing in Nassau County, New York, and Ontario, Canada, respectively, challenge a January 18, 2007 order of the District Court dismissing their suit under 42 U.S.C. § 1983 for lack of standing and failure to state a claim upon which relief can be granted. *See*

2

Fed. R. Civ. P. 12(b)(1), (6). Plaintiffs' putative class action alleged that an interstate highway toll policy of defendants-appellees New York Thruway Authority and John Buono, Chief Executive and Chairman of the New York Thruway Authority (jointly, "NYTA"), that affords a discount to residents of a particular city violated the dormant Commerce Clause in addition to plaintiffs' rights under the Equal Protection Clause and the Privileges and Immunities Clause of the Fourteenth Amendment as well as the Privileges and Immunities Clause of Article IV of the U.S. Constitution. In this appeal we consider whether (1) plaintiffs have Article III standing to challenge NYTA's toll policy; (2) plaintiffs are proper parties to bring suit under the Supreme Court's "prudential standing" doctrine; (3) NYTA has established that it acted as a "market participant," and not as a governmental entity regulating interstate commerce; (4) plaintiffs have stated a claim under the dormant Commerce Clause; (5) plaintiffs have alleged an infringement of their right to travel in violation of the Equal Protection Clause and the Privileges and Immunities Clause of the Fourteenth Amendment; and (6) Rubin, a U.S. citizen residing in Canada, stated a claim under the Privileges and Immunities Clause of Article IV of the U.S. Constitution.

## BACKGROUND

The Grand Island Bridges (jointly, "Grand Island Bridge" or "the Bridge"), maintained and operated by NYTA, comprise a portion of Interstate-190 that spans Grand Island, New York, a municipality situated in the Niagara River approximately halfway between Niagara Falls, New York and Buffalo, New York. Plaintiffs' amended complaint alleges that, pursuant to NYTA policy, each vehicle crossing the Bridge—except those driven by residents of Grand Island—must pay a toll of 75 cents. Residents of Grand Island, who may establish their status with, among other things, vehicle registration documents, are entitled to pay as little as 9 cents per trip—that is, 66 cents less per trip than non-residents of Grand Island. Prior to initiating this litigation, each plaintiff paid the

3

non-resident toll during trips through New York to New Jersey for shopping, tourism, and other activities.

In March 2006, plaintiffs filed this putative class action in the United States District Court for the Northern District of New York (Gary L. Sharpe, *Judge*). In their complaint, plaintiffs alleged, pursuant to 42 U.S.C. § 1983, that NYTA's toll scheme violated several provisions of the United States Constitution: the Commerce Clause, the Privileges and Immunities Clauses of Article IV and of the Fourteenth Amendment, and the Equal Protection Clause. Additionally, plaintiffs alleged that NYTA's toll policy violated the Equal Protection Clause of the New York Constitution.[1] NYTA moved to dismiss plaintiffs' claims, arguing that plaintiffs lacked standing and that, in any event, plaintiffs failed to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(1), (6). The District Court permitted plaintiffs to file an amended complaint prior to taking the motion under consideration.

In a January 18, 2007 memorandum-decision and order, the District Court dismissed plaintiffs' complaint with prejudice. *See Selevan v. N.Y. Thruway Auth.*, 470 F. Supp. 2d 158, 178 (N.D.N.Y. 2007). In a thoughtful and careful opinion, the District Court held that plaintiffs lacked standing under the Supreme Court's "prudential standing" doctrine because their claims did not fall within the "zone of interests" protected by (1) the Commerce Clause, *see id.* at 172, (2) the Equal Protection Clause of the Fourteenth Amendment, *see id.* at 176, or (3) the Privilege and Immunities Clause of Article IV, *see id.* at 173-74. The District Court did not consider whether plaintiffs had stated a claim under the Privileges and Immunities Clause of the Fourteenth Amendment on the basis that plaintiffs' complaint had done nothing more than recite that provision. *See id.* at 172 n.10.

---

[1] Article I § 11 of the New York Constitution provides that "[n]o person shall be denied the equal protection of the laws of this state or any subdivision thereof."

The District Court also held that even if plaintiffs had standing to bring their equal protection claim, dismissal was appropriate because they had failed to state a claim. *Id.* at 176-77. Inasmuch as the Equal Protection Clauses of the U.S. Constitution and the New York Constitution are co-extensive, the District Court's equal protection analysis also resulted in the dismissal of plaintiffs' state law claim. *See Town of Southold v. Town of E. Hampton*, 477 F.3d 38, 52 n.3 (2d Cir. 2007) ("Because the Equal Protection Clauses of the federal and New York Constitutions are coextensive, our analysis responds to [plaintiff's] claims under each of these provisions." (citation omitted)). Because it dismissed plaintiffs' action in its entirety, the District Court did not consider whether class certification was appropriate.

Selevan and Rubin filed this timely appeal.

## DISCUSSION

On appeal, plaintiffs contend that the District Court erred in dismissing their action. They argue that they had standing to sue and that they had indeed stated claims under the Commerce Clause, the Equal Protection Clause, and the Privileges and Immunities Clause of the Fourteenth Amendment. Only Rubin has appealed the District Court's holding with respect to the Privileges and Immunities Clause of Article IV. NYTA contends that we should affirm the District Court's dismissal because plaintiffs lacked Article III standing inasmuch as they did not establish that they had suffered injury-in-fact. Further, NYTA argues that plaintiffs failed to state a claim under any of the constitutional provisions cited in their amended complaint.

We review *de novo* a district court's dismissal of a complaint for lack of standing, *see* Fed. R. Civ. P. 12(b)(1), and for failure to state a claim, *see* Fed R. Civ. P. 12(b)(6). *See, e.g., Klein & Co. Futures, Inc. v. Bd. of Trade*, 464 F.3d 255, 259 (2d Cir. 2006); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). In conducting this review, we assume all "well-pleaded factual allegations"

5

to be true, and "determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). "We construe plaintiffs' complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in plaintiffs' favor." *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009) (internal quotation marks omitted).

We first consider whether plaintiffs have established Article III standing. Second, we turn to plaintiffs' claim under the Commerce Clause. In discussing this claim, we address the District Court's holding that plaintiffs' claim should be dismissed under the Supreme Court's "prudential standing" doctrine, and we consider NYTA's argument that plaintiffs' claim was properly dismissed because, under the "market participant" doctrine in the Supreme Court's dormant Commerce Clause jurisprudence, NYTA was not in fact regulating interstate commerce in charging tolls on the Grand Island Bridge. We then consider whether plaintiffs have stated a claim under the dormant Commerce Clause. Third, we address plaintiffs' contention that they have stated claims under the Equal Protection Clause and the Privileges and Immunities Clause of the Fourteenth Amendment for a violation of their right to travel. Finally, we consider Rubin's contention that she has stated a claim under the Privileges and Immunities Clause of Article IV.

## I.  Article III Standing

Under Article III of the Constitution, the jurisdiction of federal courts is limited to the resolution of "cases" and "controversies." U.S. Const. art. III, § 2. "In order to ensure that this 'bedrock' case-or-controversy requirement is met, courts require that plaintiffs establish their 'standing' as 'the proper part[ies] to bring' suit." *W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 106 (2d Cir. 2008) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). Specifically, plaintiffs must demonstrate "(1) *injury-in-fact*, which is a 'concrete and particularized' harm to a 'legally protected interest'; (2) *causation* in the form of a 'fairly traceable' connection between the

6

asserted injury-in-fact and the alleged actions of the defendant; and (3) *redressability*, or a non-speculative likelihood that the injury can be remedied by the requested relief." *Id.* at 106-07 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

NYTA argues that plaintiffs have not suffered injury-in-fact because "a discount afforded to differently-situated individuals does not necessarily result in a palpable 'injury' to those not afforded the discount." Appellee's Br. 13. In support of this contention, NYTA relies on the Supreme Court's decision in *DaimlerChrysler Corp. v. Cuno* for the proposition that where "redressability [of a claimed injury] requires speculating that abolishing the challenged credit will redound to the benefit of the taxpayer because legislators will pass along the supposed increased revenue in the form of tax reductions," that injury is too "conjectural or hypothetical" to satisfy Article III. 547 U.S. 332, 344 (2006).

The District Court properly rejected NYTA's argument that plaintiffs had not suffered an injury-in-fact. It correctly observed that "[p]laintiffs define their injury as the burden of paying higher toll rates than Grand Island residents and the denial of toll discounts based on their residency status." *Selevan*, 470 F. Supp. 2d at 168. The Supreme Court has held that "[c]onsumers who suffer this sort of injury [*i.e.*, prices higher than other consumers] from regulation forbidden under the Commerce Clause satisfy the standing requirements of Article III." *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 286 (1997). Unlike the plaintiffs in *DaimlerChrysler*, who were taxpayers opposing a tax credit received by others in the hope that abolishing the tax credit would reduce their tax burden, *see* 547 U.S. at 344-45, plaintiffs in this case contend that they have been charged an inflated toll rate that, among other things, discriminates against interstate commerce. Inasmuch as plaintiffs alleged that they have paid higher tolls as a result of NYTA's policy, they have articulated a "commercial, economic injury that is concrete and specific to them," and is caused by NYTA's alleged violation of

7

the Commerce Clause. *Selevan*, 470 F. Supp. 2d at 168. Because this injury would be redressed by the injunctive and monetary relief plaintiffs seek, plaintiffs have met the Article III standing requirement.

## II. Interstate Commerce

We now turn to the District Court's dismissal of plaintiffs' claim under the so-called "dormant" Commerce Clause. The Commerce Clause provides that "Congress shall have Power . . . [t]o regulate Commerce with foreign Nations, and among the several States." U.S. Const. art. I, § 8, cl. 3. The Supreme Court has explained that "the [Commerce] Clause was designed in part to prevent trade barriers that had undermined efforts of the fledgling States to form a cohesive whole following their victory in the Revolution." *Hughes v. Alexandria Scrap Corp.*, 426 U.S. 794, 807 (1976). In the eloquent words of Justice Jackson,

> Our system, fostered by the Commerce Clause, is that every farmer and every craftsman shall be encouraged to produce by the certainty that he will have free access to every market in the Nation, that no home embargoes will withhold his export, and no foreign state will by customs duties or regulations exclude them. Likewise, every consumer may look to the free competition from every producing area in the Nation to protect him from exploitation by any. Such was the vision of the Founders; such has been the doctrine of [the Supreme] Court which has given it reality.

*H.P. Hood & Sons, Inc. v. Du Mond*, 336 U.S. 525, 539 (1949).

In implementing the Commerce Clause, the Supreme Court "has adhered strictly to the principle 'that the right to engage in interstate commerce is not the gift of a state, and that a state cannot regulate or restrain it." *Hughes*, 426 U.S. at 808. It flows from this principle that "[t]he negative or dormant implication of the Commerce Clause prohibits state taxation or regulation that discriminates against or unduly burdens interstate commerce and thereby impedes free private trade

8

in the national marketplace." *Gen. Motors Corp.*, 519 U.S. at 287 (internal quotation marks, brackets, and citations omitted).

The Supreme Court has recognized that "there is a residuum of power in the state to make laws governing matters of local concern which nevertheless in some measure affect interstate commerce or even, to some extent, regulate it." *Kassel v. Consol. Freightways Corp. of Del.*, 450 U.S. 662, 669 (1981) (internal quotation marks omitted). Accordingly, "[t]he Commerce Clause does not . . . invalidate all State restrictions on commerce." *Id.* A state statute or regulation may violate the dormant Commerce Clause only if it (1) "clearly discriminates against interstate commerce in favor of intrastate commerce," (2) "imposes a burden on interstate commerce incommensurate with the local benefits secured," or (3) "has the practical effect of 'extraterritorial' control of commerce occurring entirely outside the boundaries of the state in question." *Freedom Holdings Inc. v. Spitzer*, 357 F.3d 205, 216 (2d Cir. 2004) (citing, *inter alia*, *Wyoming v. Oklahoma*, 502 U.S. 437, 454-55 (1992); *Healy v. The Beer Inst.*, 491 U.S. 324, 336 (1989); *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)).

In their amended complaint, plaintiffs alleged that NYTA's toll policy at Grand Island Bridge "discriminate[s] to the disadvantage of out-of-state interests and to the advantage of in-state interests and place[s] burdens on interstate commerce that exceed any local benefit that allegedly may be derived from them." J.A. 171 (Am. Compl. ¶ 36). After detailing NYTA's toll policy at the Bridge and alleging that the Bridge was "an instrumentality or channel of interstate commerce," J.A. 167 (Am. Compl. ¶ 20), plaintiffs contended that "[t]he use of the Grand Island Bridge and the preferential tolls collected by [NYTA] all directly implicate interstate commerce and monetarily affect the travel of citizens of the United States who were not residents of the preferentially treated location." J.A. 167 (Am. Compl. ¶ 24). Plaintiffs added that "[t]he amounts of the tolls discriminatorily collected are presently unknown and exclusively within the knowledge of [NYTA],

but the amount is, upon information and belief, substantial. No substantial government interest supports the discriminatory toll structure, and whatever ends it seeks to achieve could be achieved by alternatives that do not discriminate according to residence." J.A. 168 (Am. Compl. ¶ 24).

The District Court dismissed plaintiffs' Commerce Clause claim, holding that plaintiffs did not satisfy the Supreme Court's "prudential standing" requirement because their claims alleged injuries that were "strictly local" and therefore, at most, "marginally within the zone of interests protected by the Commerce Clause." *Selevan*, 470 F. Supp. 2d at 172. Plaintiffs urge that their claim falls within the "zone of interests" protected by the Commerce Clause because "they were interstate travelers in automobiles on the interstate highway system and were engaging in interstate commerce by the purchase of goods and tourism services." Appellant's Reply Br. 12. NYTA defends the District Court's rationale, arguing, among other things, that plaintiffs' claim does not implicate interstate commerce because (1) "99.9% of New York State residents," as well as all non-New Yorkers, are ineligible for the lower toll rate, Appellee's Br. 21, and (2) a toll of 75 cents is too trivial an amount to give rise to a Commerce Clause violation, *id.* at 24. Further, NYTA argues that, even if one were to assume *arguendo* that plaintiffs have standing, the toll policy does not violate the Commerce Clause because NYTA's operation of the bridge falls under the "market participant" exception to the requirements of the dormant Commerce Clause.

### A. Prudential Standing

We first consider whether the plaintiffs have satisfied the Supreme Court's "prudential standing" requirements. Unlike "Article III standing, which enforces the Constitution's case-or-controversy requirement," prudential standing, the second facet of the Supreme Court's standing jurisprudence, embodies "judicially self-imposed limits on the exercise of federal jurisdiction." *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004) (internal quotation marks and citation

10

omitted). The Supreme Court has held that "prudential standing encompasses the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Id.* at 12 (internal quotation marks omitted).

We agree with plaintiffs that the District Court improperly dismissed their claim for lack of prudential standing. Although it is of course essential that district courts ensure that each plaintiff is a proper party to bring a suit, we have explained that the zone-of-interests requirement invoked by the District Court in this case is "not a rigorous one." *Nat'l Weather Serv. Employees Org., Branch 1-18 v. Brown*, 18 F.3d 986, 989 (2d Cir. 1994); *see also Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399 (1987) (holding that a plaintiff's right of review may be denied only "if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit. *The test is not meant to be especially demanding.*" (emphasis added)). Indeed, the Supreme Court has held that this requirement is satisfied whenever "the interest sought to be protected by [plaintiffs] is *arguably* within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153 (1970) (emphasis added).

According to the District Court, "[t]he true gravamen of plaintiffs' complaint is that the Grand Island toll policy discriminates against New York citizens traversing a bridge within the State." *Selevan*, 470 F. Supp. 2d at 172. We disagree. First, as noted, each plaintiff alleged that he or she paid the Grand Island Bridge toll as part of a trip to another state, where each engaged in shopping and other commercial activities. *See* J.A. 164-65 (Am. Compl. ¶¶ 5-6). Moreover, that plaintiffs may not have crossed into another state immediately upon paying the toll is of no

11

importance; the critical inquiry in our jurisprudence is whether the toll in some way *affects* interstate commerce. *See Freedom Holdings*, 357 F.3d at 216.

NYTA's additional arguments in support of the District Court's holding are without merit. First, even assuming that the Grand Island toll policy does not apply to "99.9%" of New Yorkers, Appellee's Br. 21, plaintiffs' claim still cannot be dismissed on this basis. We have never suggested that a state regulation must benefit a large percentage of the state's population in order to violate the dormant Commerce Clause. *See Freedom Holdings*, 357 F.3d at 216-18. If it were the case that the dormant Commerce Clause did not apply to discriminatory regulations that benefit only a relatively small subset of a state's population, states would be able to promote their own economic interests at the expense of out-of-state interests simply by imposing regulations that benefit some small interest group within the state, such as manufacturers of a specific product. This would hardly serve the purpose of the Clause, as in many cases this could directly violate its central purpose.

Second, NYTA's argument that "the 75-cent general toll did not impose any cognizable burden on interstate commerce," Appellee's Br. 24, is foreclosed by the Supreme Court's decision in *Oregon Waste Systems, Inc. v. Department of Environmental Quality*, 511 U.S. 93 (1994). In that case, the Court rejected the argument that a surcharge of $2.25 per ton of solid waste generated outside of the state was too minimal an amount to be discriminatory under the dormant Commerce Clause. *See id.* at 100 n.4. The Court reasoned that "the degree of a differential burden or charge on interstate commerce 'measures only the *extent* of the discrimination' and 'is of no relevance to the determination whether a State has discriminated against interstate commerce.'" *Id.* (quoting *Wyoming v. Oklahoma*, 502 U.S. 437, 455 (1992)). Here too, the toll differential speaks to the extent of the alleged discrimination, rather than to the presence of a violation. Because this case comes before us following a decision on a motion to dismiss, we need only consider whether the complaint alleges a

12

plausible claim that the regulation violates the Commerce Clause. *See, e.g.*, *Iqbal*, 129 S. Ct. at 1950. Whether the 75-cent toll is actually a burden on interstate commerce is a question left for later proceedings.

## B. Market Participant

NYTA argues that, even if plaintiffs have standing to pursue their dormant Commerce Clause claim, the policy is not unconstitutional because of the so-called "market participant" doctrine.[2] This doctrine "differentiates between a State's acting in its distinctive governmental capacity, and a State's acting in the more general capacity of a market participant; only the former is subject to the limitations of the [dormant] Commerce Clause." *New Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 277 (1988). The Supreme Court has held that "[n]othing in the purposes animating the Commerce Clause prohibits a State, in the absence of congressional action, from participating in the market and exercising the right to favor its own citizens over others." *Reeves, Inc. v. Stake*, 447 U.S. 429, 436 (1980). The Court has not articulated a bright-line rule to discern governmental regulation of commerce from market participation; courts must make fact-specific inquiries on a case-by-case basis. "Thus, for example, when a State chooses to manufacture and sell cement, its business methods, including those that favor its residents, are of no greater constitutional concern than those of a private business." *New Energy Co.*, 486 U.S. at 277 (citing *Reeves*, 447 U.S. at 438-39); *see also Hughes*, 426 U.S. at 809 (holding that a state's program of purchasing abandoned vehicles from within the state but not from other states did not burden interstate commerce). *But see Toomer v. Witsell*, 334 U.S. 385, 406 (1948) (holding that the Commerce Clause was violated where a state required that shrimp boats fishing off of its coast pack their shrimp and pay state taxes before

---

[2] NYTA raised this argument in its Memorandum of Law in Support of Defendants' Motion to Dismiss. *See* J.A. 29-31. Presumably because the District Court concluded that plaintiffs lacked standing to raise their Commerce Clause claim, it did not reach this question.

transporting their catch interstate).  In sum, a court reviewing a claim that the dormant Commerce Clause has been violated must consider in each specific context if the government is acting like a private business or a governmental entity.

NYTA contends that "[i]n setting toll rates to raise revenue to maintain its property and satisfy its bondholders, [NYTA] is not regulating commerce, but is acting in a proprietary capacity as a market participant in the local highway transportation market."  Appellee's Br. 9-10.  However, the statute creating NYTA provides that NYTA "*shall be regarded as performing a governmental function* in carrying out its corporate purpose and in exercising the powers granted by this title."  N.Y. Pub. Auth. § 353 (emphasis added).  There is good reason for this designation and for our repeated observation that building and maintaining roads is a core governmental function.  *See USA Recycling, Inc. v. Town of Babylon*, 66 F.3d 1272, 1284 (2d Cir. 1995) ("State governments have turned to the private sector to 'contract out' or 'outsource' numerous governmental functions, including . . . *the operation of toll roads*." (emphasis added)); *Murray v. City of Milford*, 380 F.2d 468, 470 (2d Cir. 1967) ("The construction and maintenance of roads is a 'governmental function . . . .'").  Although there is undoubtedly a market comprised of private entities competing with one another for government contracts, we see no evidence in the record that NYTA competes with other entities that are also seeking to build and maintain highway systems.  Unlike a private actor, NYTA may (1) use or possess any real property or rights in real property acquired by the state, *see* N.Y. Pub. Auth. § 357, (2) avoid holdouts by resorting to eminent domain to amass the property necessary to build roads, *see id.* §§ 358, 358-a, and (3) issue bonds that are "fully and unconditionally guaranteed by the state" in order to raise capital to fund road construction and maintenance projects, *id.* § 366(1).  NYTA may also "accept any gifts or any grant of funds or property from the federal government or from the state . . . or any other federal or state public body."  *Id.* § 354(14).

14

NYTA's reliance on *Endsley v. City of Chicago*, 230 F.3d 276, 283-85 (7th Cir. 2000), for the proposition that a state *may* "act[ ] in a proprietary capacity as an entrant into the local highway transportation market," Appellee's Br. 17, is misplaced. In *Endsley*, plaintiffs challenging Chicago's operation of the city's Skyway toll bridge essentially "plead[ed] themselves out of court" by noting in their complaint that, "[s]ince its inception, [Chicago] has operated [the bridge] as a proprietary enterprise, and not in its governmental capacity." 230 F.3d at 284. The Seventh Circuit's observation that "the facts suggest that [Chicago] was indeed a market participant," *id.*, was *dicta* and, in any event, not binding authority for this Court. On this record, we see no reason to conclude that the instant case is like *Reeves*, where South Dakota entered a market to produce and sell cement in competition with private cement suppliers, *see* 447 U.S. at 440, or *Hughes*, where Maryland entered "into the market as a purchaser, in effect, of a potential article of interstate commerce," 426 U.S. at 808. In short, nothing in this record permits the conclusion that, in this instance, NYTA is a market participant.

We need not reach the question whether, or under what circumstances, a governmental entity may act as a market participant by building and maintaining roads. We hold simply that, at least in this stage of the litigation, a finding that NYTA acted as a "market participant" (rather than in its governmental capacity) is not warranted. As we explain below, the toll may well be permissible, but, absent a finding that NYTA acted as a market participant, it is subject to scrutiny under the dormant Commerce Clause.

### C. Dormant Commerce Clause Claim

Having concluded that plaintiffs have standing to pursue their dormant Commerce Clause claim and that NYTA has not established that it acted as a market participant, we consider whether plaintiffs have stated a claim under the Commerce Clause. Plaintiffs allege that NYTA's toll policy

15

discriminates against interstate commerce and that, in the alternative, it imposes a burden on interstate commerce that is not justified by any benefits it creates. Discerning which, if any, Commerce Clause claim has been stated is significant because "a statute that clearly discriminates against interstate commerce in favor of intrastate commerce is virtually invalid *per se* and can survive only if the discrimination is demonstrably justified by a valid factor unrelated to economic protectionism." *Freedom Holdings, Inc.*, 357 F.3d at 216 (internal quotation marks and citations omitted). Put differently, as a threshold inquiry we must determine if the toll policy discriminates against interstate commerce because, if it does, it is "virtually invalid *per se*," *id.*, and if it does not, it will have a comparatively easier time passing constitutional muster.

First, we consider if the policy discriminates against interstate commerce. *See, e.g., id.* The Supreme Court has explained that "[t]he central rationale for the rule against discrimination is to prohibit state or municipal laws whose object is *local economic protectionism*, laws that would excite those jealousies and retaliatory measures the Constitution was designed to prevent." *C&A Carbone, Inc. v. Town of Clarkstown*, 511 U.S. 383, 390 (1994) (emphasis added). Accordingly, a state regulation "discriminates" against interstate commerce only if it "impose[s] commercial barriers or discriminate[s] against an article of commerce by reason of its origin or destination out of State." *Id.* We have held that, in order to state a claim for discrimination in violation of the Commerce Clause, a plaintiff must "identify an[ ] in-state commercial interest that is favored, directly or indirectly, by the challenged statutes at the expense of out-of-state competitors." *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 169 (2d Cir. 2005) (internal quotation marks omitted). Here, plaintiffs have failed to "identify an[ ] in-state commercial interest that is favored," and they do not point to a particular "out-of-state competitor" that is harmed by NYTA's toll policy. *See id.*; *see also Town of Southold*, 477 F.3d at 49. Both an in-state interest and an out-of-state competitor are necessary

16

because "laws that draw distinctions between entities that are not competitors do not 'discriminate' for purposes of the dormant Commerce Clause." *Town of Southold*, 477 F.3d at 49. Because plaintiffs have failed to identify any specific interests, we hold that plaintiffs have not alleged that NYTA's toll policy "discriminates" against interstate commerce.

Although the District Court correctly reasoned that plaintiffs failed to allege that the NYTA policy "discriminates" against interstate commerce, the District Court incorrectly failed to further inquire if the policy otherwise violated the Commerce Clause. Specifically, the District Court did not acknowledge the well-established rule that, under the so-called *Pike* test, a nondiscriminatory regulation that "regulates even-handedly to effectuate a legitimate local public interest," *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970), is nevertheless unconstitutional if "'the burden imposed on interstate commerce is clearly excessive in relation to the putative local benefits.'" *United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 346 (2007) (quoting *Pike*, 397 U.S. at 142) (brackets omitted). As noted, plaintiffs have alleged that NYTA's policy of charging non-residents of Grand Island tolls that are more than eight times greater than the tolls charged to Grand Island residents "place[s] burdens on interstate commerce that exceed any local benefit that allegedly may be derived from them." J.A. 171 (Am. Compl. ¶ 36). Because at this state of a suit we are required to assume all "well-pleaded factual allegations" are true and assess the complaint only to "determine whether [the allegations] plausibly give rise to an entitlement to relief" at this stage of litigation, *Iqbal*, 129 S.Ct. at 1950, we conclude that plaintiffs' allegations are sufficient to survive a motion to dismiss.

Despite NYTA's arguments to the contrary, the size of the burden on an individual plaintiff is irrelevant. NYTA correctly observes that the lead plaintiffs in this putative class action have alleged only a small injury to themselves inasmuch as they do not claim to have paid the nonresident

17

toll on a regular basis. Plaintiffs have alleged that, during the relevant class period, each paid the full-price toll during "*a trip* through the State of New Jersey." J.A. 164 (Am. Compl. ¶¶ 5-6). However, NYTA's observation is not a basis for dismissing plaintiff's claim. Plaintiffs seek to represent an entire class of "United States citizens who, since March 6, 2000[,] . . . paid tolls at the Grand Island bridges without the benefit of the resident discount." J.A. 169 (Am. Compl. ¶ 27). Although we are not aware of the precise number of potential plaintiffs, we are confident that neither the number of prospective class members nor the cumulative difference between the tolls they paid and those paid by Grand Island residents is negligible. In any event, we have recognized a violation of the dormant Commerce Clause where three individuals, who were "recruited to be plaintiffs," paid a passenger fee of between 50 cents and two dollars, which comprised a "relatively . . . small portion of [a] total ferry ticket price" for the use of state-provided facilities. *See Bridgeport & Port Jefferson Steamboat Co. v. Bridgeport Port Auth.*, 567 F.3d 79, 82, 83 (2d Cir. 2009). This is so because, as the preceding discussion illustrates, whether a state policy violates the dormant Commerce Clause does not depend on the extent of its impact on an individual plaintiff. Rather, a state policy that is challenged under the dormant Commerce Clause must be judged by its overall economic impact on *interstate commerce* in relation to the putative local benefits conferred. *See Pike*, 397 U.S. at 142.

For these reasons, we hold that plaintiffs have stated a claim under the Commerce Clause and that the District Court erred in dismissing this claim.

On remand, the District Court shall undertake the inquiry prescribed by the Supreme Court for determining whether a fee imposed by a governmental entity to defray the cost of facilities used by those engaged in interstate commerce violates the dormant Commerce Clause or the right to travel, which we discuss below. In *Evansville-Vanderburgh Airport Authority District v. Delta Airlines,*

18

*Inc.*, the Court explained that states are always entitled to require interstate travelers "to bear a fair share of the costs of providing public facilities that further travel." 405 U.S. 707, 712 (1972). After reviewing a long line of its precedents permitting states to impose highway tolls so long as they "reflect a uniform, fair and practical standard relating to public expenditures," *id.* at 716 (internal quotation marks omitted), the Court concluded that a flat fee of one dollar per passenger for the use of state airports did not abridge the dormant Commerce Clause or the right to travel where it was "designed only to make the user of state-provided facilities pay a reasonable fee to help defray the costs of their construction and maintenance." *Id.* at 714. In *Northwest Airlines, Inc. v. County of Kent*, 510 U.S. 355 (1994), the Court formulated a three-factor test, based on the reasoning of the Court in *Evansville*, to evaluate the reasonableness of fees charged for the use of state-provided facilities. Under this test, a fee is reasonable and constitutionally permissible "if it (1) is based on some fair approximation of use of the facilities, (2) is not excessive in relation to the benefits conferred, and (3) does not discriminate against interstate commerce." 510 U.S. at 369 (citing *Evansville*, 405 U.S. at 716-17).

The Supreme Court's analysis in *Evansville* was based in large part on its examination of cases involving challenges to highway tolls, but the Court has not used the *Northwest Airlines* test to evaluate the constitutionality of a highway toll nor has it indicated whether the *Pike* test or the *Northwest Airlines* test should apply when highway tolls are challenged.[3] However, we do not read

---

[3] Although the *Pike* test applies only in dormant Commerce Clause analysis and only where a state policy "regulates even-handedly to effectuate a legitimate local interest," *Pike*, 397 U.S. at 142, the Court has used the *Evansville/Northwest Airlines* test to evaluate the "reasonableness" of fees in other contexts. *See, e.g., Northwest Airlines*, 510 U.S. at 358 (considering whether an airport user fee violated the Anti-Head Tax Act, 49 U.S.C. § 1513, and the Commerce Clause); *Am. Trucking Ass'ns v. Scheiner*, 483 U.S. 266, 289-90 (1987) (applying *Evansville*'s analysis in considering whether a state tax applied to an interstate motor carrier violated the Commerce Clause); *Massachusetts v. United States*, 435 U.S. 444, 464-67 (1978) (applying *Evansville*'s analysis to assess the constitutionality of a tax under the intergovernmental immunity doctrine).

*Evansville*, which the Court decided two years after *Pike*, as supplanting *Pike*. Rather, *Evansville* addressed in a specific context the same concerns addressed in *Pike* while also adopting the Supreme Court's analysis of "discrimination" under the dormant Commerce Clause. For example, factors one and two of the *Northwest Airlines* test achieve the same end as *Pike*—the invalidation of state policies that impose an undue burden on interstate commerce—inasmuch as they require the court to consider whether the fee supplies a benefit to users of a facility that is at least roughly commensurate with the burden it imposes on them. *See, e.g., Evansville*, 405 U.S. at 719 ("[T]he airlines have not shown these fees to be excessive in relation to the costs incurred by the taxing authorities."). Just as the *Pike* test would uphold as constitutional any state policy that confers a local benefit and does not impose a *clearly* excessive burden on interstate commerce, *see* 397 U.S. at 142, the *Northwest Airlines* test permits the state to make "reasonable" exceptions to its fee schedule, so long as the fee schedule, on the whole, reflects at least "a fair, [even] if imperfect, approximation of the use of facilities for whose benefit they are imposed." *Id.* at 717. Consistent with the rest of the Supreme Court's dormant Commerce Clause jurisprudence, the third factor in the *Northwest Airlines* test—whether a user fee discriminates against interstate commerce, *see* 510 U.S. at 369—prevents fees "whose object is local economic protectionism," *see C&A Carbone, Inc.* 511 U.S. at 390.

Our Court, too, has never used the *Northwest Airlines* test or the *Pike* test to determine the constitutionality of a highway toll, but we recently employed the *Northwest Airlines* test in considering whether a fee imposed on ferry passengers for the use of port facilities violated the dormant Commerce Clause or the passengers' right to travel. *See Bridgeport & Port Jefferson Steamboat Co.*, 567 F.3d at 83-84, 86-88 (applying the three-factor test announced in *Northwest Airlines*). The First Circuit relied on the Supreme Court's reasoning in *Evansville* to assess a dormant Commerce Clause

20

challenge to a highway toll discount program offered by the Massachusetts Turnpike Authority. *See Doran v. Mass. Turnpike Auth.*, 348 F.3d 315, 320-21 (1st Cir. 2003) (applying the *Evansville/Northwest Airlines* test in a case involving a challenge to interstate toll under the Commerce Clause). One District Court in our Circuit has applied *Evansville* in considering a challenge under the dormant Commerce Clause to a similar discount program offered by the Port Authority of New York and New Jersey and the Metropolitan Transportation Authority to users of the electronic toll system E-ZPass. *See Saunders v. Port Auth. of N.Y.*, 2004 WL 1077964, *3 (S.D.N.Y. May 13, 2004) (relying on *Evansville* for the proposition that "[t]he tolls at issue constitute user fees").

Although neither the Supreme Court nor our Court has used the *Northwest Airlines* test to evaluate the constitutionality of a highway toll, we believe that this is the applicable test in the circumstances presented here. The challenge to a highway toll here—which indisputably grants vehicles access to a state-provided bridge—closely resembles the challenge to the airport user fee at issue in *Evansville*, and we conclude that, on remand, plaintiffs' dormant Commerce Clause claim should be analyzed under the three-part test set forth in *Northwest Airlines*. NYTA is entitled to charge plaintiffs a reasonable fee for the use of the Grand Island Bridge. However, it may not impose on users of the Bridge a burden that is not commensurate with the benefits it confers, and it may not discriminate against interstate commerce. *See Northwest Airlines*, 510 U.S. at 369. Whether the fee schedule exception provided to Grand Island residents violates the dormant Commerce Clause will depend in part on whether the fee represents a fair approximation of that group's use of the bridge—an inquiry that is too fact-dependent to be decided upon examination of the pleadings. *See id.* In other words, the District Court should consider whether the NYTA policy at issue reflects "rational distinctions among different classes of" motorists using the Bridge, s*ee Evansville*, 405 U.S. at 718, so that each user, on the whole, pays some approximation of his or her fair share of the

21

state's cost for maintaining the Bridge. *Cf. Doran*, 348 F.3d at 320 ("'So long as a State bases its tax on a relevant measure of actual road use, obviously both interstate and intrastate [drivers] pay according to the facilities in fact provided by the State,' and the program places no undue burden on interstate commerce." (quoting *Scheiner*, 483 U.S. at 291) (some brackets omitted)).  The District Court must also consider whether the toll charged to non-residents of Grand Island is excessive in relation to the benefit it confers to them and whether the toll discriminates against interstate commerce.[4]  We emphasize "that there need not be a perfect fit between the use of the [Bridge] and the support of [the Bridge] by" the toll.  *Bridgeport & Port Jefferson Steamboat Co.*, 567 F.3d at 86.  The *Northwest Airlines* test is not inflexible; it simply requires "reasonableness."

### III.    The Right to Travel

Plaintiffs also maintain that NYTA's toll policy abridges their right to travel in violation of the Privileges and Immunities Clause of the Fourteenth Amendment and the Equal Protection Clause of the United States Constitution, as well as the Equal Protection Clause of the New York Constitution, inasmuch as NYTA charged them a higher toll than a subset of similarly situated New York residents.[5]  Finding that plaintiffs had not attempted to assert a claim under the Privileges and Immunities Clause of the Fourteenth Amendment, the District Court did not address that contention.  It rejected plaintiffs' equal protection claim on the grounds that plaintiffs lacked

---

[4] Although *Northwest Airlines* announced this three factor test, the third factor—whether the policy discriminates against interstate commerce—was a separate inquiry in *Evansville*.  405 U.S. at 717 ("*First*, neither fee discriminates against interstate commerce and travel.")  We have already held that plaintiffs' Amended Complaint fails to allege that NYTA's policy discriminates against interstate commerce.  Unless plaintiffs are afforded a further opportunity to amend their complaint, the District Court must assess only the remaining two factors on remand.

[5] As noted, "[b]ecause the Equal Protection Clauses of the federal and New York Constitutions are coextensive, our analysis responds to [plaintiff's] claims under each of these provisions." *Town of Southold*, 477 F.3d at 52 n.3 (citation omitted).

22

prudential standing because (1) based on the pleadings, the tolls affected intrastate travel only, *Selevan*, 470 F. Supp. 2d at 176, and (2) assuming for the sake of argument that the tolls affected interstate travel, "[the] burden on the right to interstate travel here is minimal and insufficient to constitute a deprivation," *id.* at 177. Further, the District Court held that, even if plaintiffs had standing under the Equal Protection Clause, dismissal would be appropriate. The District Court reasoned that, because plaintiffs "h[ad] not claimed to be members of a suspect class," NYTA's policy would be subject only to "a rational basis standard of review." *Id.*[6] The District Court then concluded that NYTA had asserted a "legitimate purpose" for its toll program that plaintiffs did not dispute. *Id.*

We disagree with the District Court's analysis. As an initial matter, we do not agree that plaintiffs failed to assert a claim for a violation of their right to travel under the Privileges and Immunities Clause of the Fourteenth Amendment. As noted, plaintiffs' complaint supplied a detailed description of NYTA's Grand Island Bridge toll policy. Under the heading "Causes of Action," the complaint alleged that NYTA's toll policy deprived plaintiffs of "their constitutional rights under the Privileges and Immunities Clause of Article IV and/or the Fourteenth Amendment by *charging them more for traveling* than [NYTA] charged certain New York State residents." J.A. 171 (Am. Compl. ¶ 38) (emphasis added). Taken together, plaintiffs' allegations clearly implicate a violation of plaintiffs' right to travel under the Fourteenth Amendment's Privileges and Immunities Clause, which we describe in further detail below.

The Constitution protects a fundamental right to travel within the United States, which we have also called "the right to free movement." *Williams v. Town of Greenburgh*, 535 F.3d 71, 75 (2d

---

[6] Note that we must evaluate policies with strict scrutiny if they target a suspect class *or* implicate a fundamental right. *See, e.g.*, *Heller v. Doe*, 509 U.S. 312, 319-20 (1993).

Cir. 2008) (internal quotation marks omitted); *cf. Saenz v. Roe*, 526 U.S. 489, 500 (1999) (noting that "[t]he 'right to travel' . . . embraces *at least* three different components," including "the right of a citizen of one State to enter and leave another State, the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State, and, for travelers who elect to become permanent residents, the right to be treated like other citizens of that State." (emphasis added)). Although the Supreme Court has suggested that "[t]he textual source of the constitutional right to travel, or, more precisely, the right of free interstate migration, . . . has proved elusive," *Att'y Gen. of N.Y. v. Soto-Lopez*, 476 U.S. 898, 902 (1986), it has protected that right by invoking both the Privileges and Immunities Clause of the Fourteenth Amendment and the Equal Protection Clause.[7] *See, e.g.*, *Saenz*, 526 U.S. at 502-03 (noting that the Privileges and Immunities Clause of the Fourteenth Amendment protects "the right of [a] newly arrived citizen to the same privileges and immunities enjoyed by other citizens of the same State"); *Mem'l Hosp. v. Maricopa County*, 415 U.S. 250, 269 (1974) (holding that a state durational residence requirement impinged the right to travel, absent a compelling state interest, and therefore violated the Equal Protection Clause); *see also Zobel v. Williams*, 457 U.S. 55, 67 (1982) (Brennan, J., concurring) ("As is clear from our cases, the right to travel achieves its most forceful expression in the context of equal protection analysis."); *cf. Soto-Lopez*, 476 U.S. at 902 ("[I]n light of [the Supreme Court's] unquestioned historic acceptance of the principle of free interstate migration, and of the important role that principle has played in transforming many States into a single Nation, we have not felt impelled to locate this right definitively in any particular constitutional provision. . . . Whatever its origin, the right to [travel] is firmly established . . . .").

---

[7] Pursuant to the Fourteenth Amendment's Privileges and Immunities Clause, "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States."

Contrary to the District Court's holding in this case, we have recognized the Constitution's protection of a right to intrastate as well as interstate travel. *Williams*, 535 F.3d at 75 ("[I]ndividuals possess a fundamental right to travel *within a state*." (emphasis added)); *King v. New Rochelle Mun. Hous. Auth.*, 442 F.2d 646, 648 (2d Cir. 1971) ("It would be meaningless to describe the right to travel between states as a fundamental precept of personal liberty and not to acknowledge a correlative constitutional right to travel within a state."); *see also Ramos v. Town of Vernon*, 353 F.3d 171, 176 (2d Cir. 2003) (recognizing the "limit[ed] constitutional right to free movement within [a] [t]own"). Even if we had not recognized a right of *intra*-state travel, plaintiffs have, as noted, alleged that the toll affected their interstate travel between New York to New Jersey.[8]

"When a local regulation infringes upon a constitutionally-protected right, we apply strict scrutiny, requiring the municipality to show that the regulation is narrowly tailored to serve a compelling governmental interest." *Town of Southold*, 477 F.3d at 53 (emphasis added). The Supreme Court has explained that "[a] state law implicates the right to travel when it actually deters such travel, when impeding travel is its primary objective, or when it uses any classification which serves to penalize the exercise of that right." *Soto-Lopez*, 476 U.S. at 903 (emphasis added) (internal quotation marks and citations omitted).

---

[8] The District Court correctly observed that, in *Bray v. Alexandria Women's Health Clinic*, the Supreme Court held that a proposed demonstration at an abortion clinic amounted to a "purely intrastate restriction" that "[did] not implicate the right of interstate travel." 506 U.S. 263, 277 (1993). We note that plaintiffs in *Bray* simply alleged that they were prevented from entering abortion clinics. *See id.* The *Bray* case did not concern the use of our interstate highway system. The holding in *Bray* is consistent with our holding in *Williams*, *supra*, that the right to travel—interstate or intrastate—did not afford an individual a right to enter a particular building. *See Williams*, 535 F.3d at 76. In any event, inasmuch as plaintiffs have alleged that the NYTA toll program actually penalized their right to travel between states, we need not address any possible tensions between *Bray* and our case law.

Plaintiffs do not argue that NYTA's toll policy actually deters travel or that it was enacted primarily for the purpose of impeding travel. They contend, rather, that the policy imposes a burden or penalty on their exercise of the right to travel, and should accordingly be subject to strict scrutiny, because it denies a benefit to all non-residents of New York (and all but a subset of New York residents) who exercise the right to travel on Interstate-190 through Grand Island. We disagree. In *Evansville* the Supreme Court explained that "[t]he principle that burdens on the right to travel are constitutional only if shown to be necessary to promote a compelling state interest has no application" where travelers pay a fee to use a "facility provided at public expense [that] aids rather than hinders the right to travel." *Evansville*, 405 U.S. at 714. Indeed, the Court observed in *Soto-Lopez* that its "recent cases [concerning the right to travel] have dealt with state laws that, by classifying residents according to the time they established residence, resulted in the unequal distribution of rights and benefits among otherwise qualified bona fide residents." 476 U.S. at 903. For example, the Supreme Court has subjected to strict scrutiny analysis state laws that imposed durational residence requirements for receipt of welfare benefits, *Shapiro v. Thompson*, 394 U.S. 618, 634 (1969), *overruled in part on other grounds by Edelman v. Jordan*, 415 U.S. 651 (1974); healthcare benefits, *Mem'l Hosp.*, 415 U.S. at 254; voting rights, *see Dunn v. Blumstein*, 405 U.S. 330, 342 (1972); and a civil service preference for veterans who entered the armed forces while residing in a particular state, *Soto-Lopez*, 476 U.S. at 909. *But see Sosna v. Iowa*, 419 U.S. 393 (1975) (upholding a one-year residency requirement for maintaining an action for divorce); *Starns v. Malkerson*, 401 U.S. 985 (1971) (summarily affirming a one-year residency requirement for in-state tuition at state universities).

Our observation that "minor restrictions on travel simply do not amount to the denial of a fundamental right," *Town of Southold*, 477 F.3d at 54 (internal quotation marks omitted), is consistent

26

with the Supreme Court's jurisprudence, *cf. Miller v. Reed*, 176 F.3d 1202, 1205 (9th Cir. 1999) ("[M]inor burdens impacting interstate travel, *such as toll roads*, do not constitute a violation [of the right to travel] . . . ." (emphasis added)). In this case, plaintiffs do not allege that they or other members of the putative class routinely pay the full toll in order to commute to work or that the toll has otherwise had a substantial financial impact on them. As noted, they allege that they paid the toll en route to New Jersey for shopping and other activities. These facts suggest at most a "minor restriction" on plaintiffs' right to travel, rather than a "penalty."[9]

Nevertheless, plaintiffs' allegations implicate a possible violation of the right to travel in the context discussed in *Evansville* inasmuch as they contend that they have been charged an excessive toll for use of the Grand Island Bridge while residents of New York are charged substantially less. In *Evansville*, the Supreme Court recognized a difference between the sort of "invidious distinctions" that penalize the right to travel, *see Zobel*, 457 U.S. at 60, and cases in which a state has simply levied "a charge designed only to make the user of state-provided facilities pay a reasonable fee to help defray the costs of their construction and maintenance," *see Evansville*, 405 U.S. at 714; *see also id.* at 713 & n.6. The implication of the Court's reasoning in *Evansville* is that, in the normal course, fees designed to offset the cost of maintaining a state-provided facility are generally permissible if they

---

[9] Plaintiffs rely on the Supreme Court's decision in *Crandall v. Nevada*, 73 U.S. (6 Wall.) 35 (1867), for the proposition that "residency requirements in interstate travel, even if the amount of the 'penalty' is small or minimal, are odious and unconstitutional." Appellant's Br. 37. In *Crandall*, the Supreme Court held unconstitutional a state tax of one dollar charged to railroad passengers leaving the state. 73 U.S. at 46. However, as the Supreme Court explained in *Evansville*, "[t]he Nevada charge [at issue in *Crandall*] was not limited . . . to travelers asked to bear a fair share of the costs of providing public facilities that further travel." 405 U.S. at 712. Contrary to plaintiffs' argument before this Court, "[t]here is no solid foundation for the claim that [a] statute directly interferes with the rights of citizens of the United States to pass through the State, and is consequently bad according to the doctrine announced in *Crandall*," *id.* at 713, simply because it charges a fee to "to help defray the costs of road construction and repair," *id.* at 712.

27

"reflect a uniform, fair and practical standard relating to public expenditures." *Id.* at 716 (internal quotation marks omitted). A user fee, however, violates the right to travel unless "it (1) is based on some fair approximation of use of the facilities, (2) is not excessive in relation to the benefits conferred, and (3) does not discriminate against interstate commerce." *Northwest Airlines*, 510 U.S. at 369 (citing *Evansville*, 510 U.S. at 716-17).

Accordingly, we conclude that the District Court erred in applying rational basis review to NYTA's toll policy. On remand, the District Court shall determine whether the toll policy implicates the right to travel in the context discussed in *Evansville* and, if so, the District Court shall apply strict scrutiny. If, however, the District Court finds that the toll is merely a "minor restriction on travel" that does not amount to the denial of a fundamental right, *Town of Southold*, 477 F.3d at 54, then the District Court shall apply the *Northwest Airlines* test to determine if the toll discriminates against interstate commerce.

## IV. Article IV Privileges and Immunities Clause

Rubin, a U.S. citizen residing in Canada, argues that the District Court erred in dismissing her claim that the NYTA policy violates her rights under the Privileges and Immunities Clause of Article IV.[10] In contrast to the Privileges and Immunities Clause of the Fourteenth Amendment, which provides that "[n]o State shall make or enforce any law which shall abridge the privileges and immunities of the *citizens of the United States*," U.S. Const. amend. XIV, § 1 (emphasis added), the Privileges and Immunities Clause of Article IV provides that "[t]he *Citizens of each State* shall be entitled to all Privileges and Immunities of Citizens in the several States," U.S. Const. art. IV, § 2 (emphasis added). The plain language of the Privileges and Immunities Clause of Article IV mandates a reciprocal arrangement among the several states comprising the United States whereby

---

[10] As noted, Selevan did not appeal this aspect of the District Court's order.

28

residents of one state are entitled to enjoy the same rights as citizens of other states. Canada is not a party to that arrangement. Accordingly, the text of Article IV, Section 2 suggests that U.S. citizens living abroad who, like Rubin, are not citizens of a particular state are not entitled to its protection.

As the Supreme Court explained in *Hicklin v. Orbeck*, the purpose of the Privileges and Immunities Clause of Article IV is

> to place the citizens of each State upon the same footing with citizens of other States, so far as the advantages resulting from citizenship in those States are concerned. It relieves them from the disabilities of alienage in other States; it inhibits discriminating legislation against them by other States; . . . it insures to them in other States the same freedom possessed by the citizens of those States in the acquisition and enjoyment of property and in the pursuit of happiness; and it secures to them in other States the equal protection of their laws. It has been justly said that no provision in the Constitution has tended so strongly to constitute the citizens of the United States one people as this.

437 U.S. 518, 524 (1978) (quoting *Paul v. Virginia*, 75 U.S. (8 Wall.) 168, 180 (1869) (internal quotation marks omitted)). Put differently, the Privileges and Immunities Clause of Article IV "was designed to insure to a citizen of State A who ventures into State B the same privileges which the citizens of State B enjoy" *Zobel*, 457 U.S. at 59 n.5 (quoting *Toomer*, 334 U.S. at 395)). In *Saenz*, a right-to-travel case, the Court identified the article's Privileges and Immunities Clause as the source of the right of "*a citizen of one State* who travels in other States, intending to return home at the end of his journey, . . . to enjoy the Privileges and Immunities of Citizens in the several States that he visits." 526 U.S. at 501 (emphasis added). The Court then distinguished the Privileges and Immunities Clause of Article IV from the Privileges and Immunities Clause of the Fourteenth Amendment by noting that the rights of a newly arrived citizen of a state to enjoy the same privileges and immunities of the citizens of the same state was protected "not only by the new arrival's status as a state citizen"—a reference to the Privileges and Immunities Clause of Article

29

IV—"but also by her status as a citizen of the United States"—a reference to Privileges and Immunities Clause of the Fourteenth Amendment. 526 U.S. at 502.

As our discussion in part III, *supra*, of Rubin's right-to-travel claim under the Privileges and Immunities Clause of the *Fourteenth Amendment* demonstrates, the rights of U.S. citizens residing in foreign countries are protected by that provision of the Constitution. However, neither the text nor the purpose of the Privileges and Immunities Clause of Article IV—integrating the various states into a coherent whole—would be served by extending its protection to residents of foreign countries, even U.S. citizens residing in foreign countries.

Because foreign countries are not among the entities that Article IV seeks to integrate into a single nation, we cannot conclude that the Privileges and Immunities Clause of that article extends to residents of Canada who are also U.S. citizens. In sum, we hold that, in the circumstances presented here, the District Court properly dismissed Rubin's claim under the Privileges and Immunities Clause of Article IV.

**CONCLUSION**

For reasons stated above, we hold that

(1) plaintiffs have established standing to sue under Article III of the Constitution;

(2) plaintiffs are proper parties to allege a violation of the dormant Commerce Clause under the Supreme Court's "prudential standing" doctrine;

(3) NYTA has not established that it acted as a "market participant" rather than as a governmental entity engaged in regulation of interstate commerce;

(4) plaintiffs have stated a claim under the dormant Commerce Clause;

(5) plaintiffs have stated a claim for infringement of their right to travel in violation of the Equal Protection Clause and the Privileges and Immunities Clause of the Fourteenth Amendment;

30

(6) plaintiffs' dormant Commerce Clause and right to travel claims must be analyzed under the three-factor test set forth by the Supreme Court in *Northwest Airlines, Inc. v. County of Kent*, 510 U.S. 355, 369 (1994); and

(7) the District Court properly dismissed Rubin's challenge to NYTA's toll policy under the Privileges and Immunities Clause of Article IV.

\* \* \*

Accordingly, the January 18, 2007 order of the District Court is AFFIRMED in part, VACATED in part, and the cause is REMANDED for further proceedings consistent with this opinion.