STATE OF VERMONT

SUPERIOR COURT                                    ENVIRONMENTAL DIVISION

}
In re Richard Notice of Violation        }                    Docket No. 151-9-10 Vtec
}
}

Decision and Order on Cross-Motions for Summary Judgment

Appellant Donald Richard appealed from a September 8, 2010 decision of the Development Review Board (DRB) of the Town of Colchester, upholding a notice of violation issued to him on June 24, 2010 for the operation of a marina on his condominium property in violation of the Colchester Zoning Regulations (Zoning Regulations).  Appellant is represented by John L. Franco, Jr., Esq.; the Town of Colchester is represented by Thomas G. Walsh, Esq. and Annie Dwight, Esq. Interested parties Roland and Brenda Pepin, Jeffrey Lefebvre, and Steve Senesac have entered appearances representing themselves.

Appellant and the Town have each moved for summary judgment.  The Pepins and Mr. Lefebvre have also filed memoranda addressing the pending motions.  The following facts are undisputed unless otherwise noted.

Factual and Procedural Background

The Sunset Beach Condominium is a three-unit residential condominium development with a free-standing single-family house on each of the units.  The condominium development is located between Lake Champlain (to its west) and the roadway of East Lakeshore Drive (to its east), in the Residential-2 zoning district and the Shoreland overlay zoning district of the Town of Colchester.  Appellant currently owns the two most northerly units of the condominium; another owner owns the southernmost unit.   The northernmost of Appellant's two units has the

1

address of 1355 East Lakeshore Drive and is the sole address that is the subject of the Notice of Violation at issue in this appeal.[1]

The Sunset Beach Condominium was established by Appellant and the other original property owners by a Declaration of Condominium executed in late 1997 and recorded in the Town's land records on February 10, 1998. Town's Ex. G. The condominium is governed by the Sunset Beach Condominium Association, which has not entered an appearance in this case. The membership of the condominium association is composed of the unit owners; each unit's owner is entitled to a single "vote equal to the undivided percentage of the Common Elements pertaining to [that] Unit." Town's Ex. G, at 11.

The Declaration of Condominium provides each unit with limited common elements comprised of the common elements upon which each unit is located, down to the "lakefront." Town's Ex. G, at 6. The limited common elements of Unit 1 measure 75 feet in width, extending northerly from the southerly boundary of the condominium development, and the limited common elements of Unit 2 consist of the next northerly adjacent 55 feet in width, and the limited common elements of Unit 3 consist of the next northerly adjacent 67 feet in width. Without a map or plan it is not possible to determine whether any condominium development property

---

[1]  A map or plan of the condominium property was filed in another case related to this property, In re Richard Site Plan Amendment, Docket No. 85-5-10 Vtec, but no such plan has been provided in this case. Material facts are disputed, or at least have not been provided to the Court, as to whether the most northerly portion of the condominium property, containing the boat ramp, is part of the limited common elements controlled by Appellant. Material facts also are disputed, or have not been provided to the Court, as to whether or by what route any portion of the condominium property or Appellant's unit at 1355 East Lakeshore Drive has been used to provide access to public waters for the mooring or docking of boats. Access to the Lake over Appellant's limited common elements for any other purpose is not material to the Notice of Violation at issue in this case. See definition of "marina," note 4, below.

2

remains as common elements northerly of Unit 3, that is, of 1355 East Lakeshore Drive.

Each unit's owner is entitled to the exclusive use of that unit's limited common element and any income derived from its use, and is responsible for the cost of its maintenance or repair. The Declaration of Condominium also entitles each unit's owner "to construct a dock on the lake adjacent to [that unit's] respective Limited Common Elements provided that the same complies with all applicable federal, state and municipal laws regarding the same." Town's Ex. G, at 6. Appellant has constructed a dock in the Lake in front of the house at 1355 East Lakeshore Drive.

Interested persons' Roland and Brenda Pepin's property is located along the Lake immediately northerly of the Sunset Beach condominium development. Interested person Steve Senesac's property is located to the east across East Lakeshore Drive from the condominium development. Interested person Lefebvre's property is located along the Lake to the north of the Pepins' property. Appellant also owns two parcels of undeveloped land lying across East Lakeshore Drive from his condominium units.[2] Some of Appellants' and interested persons' property was at one time part of a larger Lefebvre lot, formerly leased for seasonal dwellings, which obtained a 1989 Act 250 permit to subdivide the property into fourteen residential lots for sale, as well as an open space lot.[3]

---

[2] Material facts are disputed or have not been provided to the Court, as to the extent to which Appellant allows people to use these parcels for parking when obtaining access to the Lake for the purpose of mooring or docking boats, or the extent to which these parcels have rights of access to the Lake for the purpose of mooring or docking boats. Access to the Lake for any other purpose is not material to the Notice of Violation at issue in this case.

[3] If the history of the property and of its use for access to the Lake is at all material to the Notice of Violation at issue in this case, it only relates to whether any

Appellant's dock and its adjacent moorings and boat lifts are used to dock or moor at least nine boats. Some of the boats belong to individuals living in the Sunset Beach condominiums; others belong to individuals who live within walking distance of the dock, including three who live on the east side of East Lakeshore Drive.

On June 23, 2010, a representative of the Planning and Zoning Department conducted a site visit at Appellant's condominium. On June 24, 2010, the Zoning Administrator sent Appellant a Notice of Violation notifying him that he was "operating a marina on [his] property located at 1355 East Lakeshore Drive without proper permits or approvals."[4] The Notice of Violation stated that "[t]his operation is in violation of Article 12 (p. 18) and Table A-1 of the Colchester Zoning

---

particular use of any part of it for access to the Lake qualifies as a nonconforming use that predates the provisions of the Zoning Regulations regulating "marinas."

[4] The Zoning Regulations define the term "marina" as "any shoreline property" used to provide either (or both) of the following:

> (a) Access to public waters for docking or mooring of five (5) or more boats with or without other services; or,
>
> (b) A small-craft harbor complex providing access to public water characterized by such activities as boat manufacture, construction or repairs, sales, rentals, chartering, derricks, docks, wharves, moorings, marine railways, boat storage and other marine-type facilities and commercial services which may include the sale of food or other services clearly incidental to the operation of the marine based activities.

The definition of the use category "marina" also requires that a marina have 150 feet of shoreline frontage. If a marina accommodates boats with sleeping facilities, it is required to provide shore-based facilities for the "pumping and/or disposal" of wastes. The definition further requires that a marina not create a "hazard to navigation," that it not "interfere with or prevent use of adjacent shoreland property" or access from the water to that property or to that property from the water, and that a marina be "compatible" with adjacent land uses and not create a "nuisance by reason of noise or fumes."

Regulations, copies of which are enclosed."[5] Table A-1 lays out the use categories that are allowed in each zoning district, whether as a permitted use or as a conditional use; page 18 contains the entire definition of the term "marina. Although the Notice of Violation only referred to page 18 and Table A-1 as being enclosed, page 19 was also provided, containing the bulk of the definition of "Marine Association, Residential." [6]

The Notice of Violation gave Appellant fifteen days to cure the violation, stating that "[t]o cure this violation you must cease the marina operation." The Notice warned him that his failure to "correct this violation" within the fifteen-day time period "may result in the issuance of a Vermont Municipal Complaint (ticket)

---

[5] "Supplement 26" of the Colchester Zoning Regulations is the version of the Article 12 definitions that was attached to the Notice of Violation; Table A-1 was provided in the form of an April 2010 draft of "Supplement 28."

[6] The Zoning Regulations define the use category of "residential marine association" as "any commonly held shoreline property which is a common element of or an appurtenance to a residential development on the same or adjacent property" that:

    (a)  provides access to public water for docking or mooring of five (5) or more boats; and

    (b) is strictly limited to use by the owner[s] of residences in the associated residential development and the immediate family of the owners according to and limited by recorded covenants in the land records; and

    (c) [] does not provide or allow such services incidental to the operation of commercial marinas as characterized by such activities as [those listed in subsection (b) of the definition of "marina."]

Like the definition of "marina," the definition of "residential marine association" requires 150 feet of shoreline frontage, but it also requires an additional 30 feet of frontage for every boat beyond the fifth boat belonging to the association. The definition also repeats the requirements found in the definition of "marina" as to pumping facilities, not creating a hazard to navigation or access, and not creating a nuisance. Because the Notice of Violation only cited the term "marina," the decision in the present appeal does not address the validity or constitutionality of the Zoning Regulations as to "residential marine associations."

with fines." The notice also informed Appellant of his right to appeal the Zoning Administrator's "interpretation of the above[-]referenced Zoning Regulations" to the DRB within 15 days.

Appellant appealed the Notice of Violation to the DRB, which issued a decision on September 8, 2010 upholding it as being for "the operation of a residential marina without proper approvals or permits." The present appeal followed.

<u>Cross-Motions for Summary Judgment</u>

A grant of "[s]ummary judgment is appropriate when, giving the benefit of all reasonable doubts and inferences to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." <u>Gade v. Chittenden Solid Waste Dist.</u>, 2009 VT 107, ¶ 7 (citing <u>Mooney v. Town of Stowe</u>, 2008 VT 19, ¶ 5, 183 Vt. 600 (mem.); V.R.C.P. 56(c)). When considering cross-motions for summary judgment, the Court gives each party "the benefit of all reasonable doubts and inferences when the opposing party's motion is being judged." <u>City of Burlington v. Fairpoint Communications, Inc.</u>, 2009 VT 59, ¶ 5, 186 Vt. 332 (citing <u>Toys, Inc. v. F.M. Burlington, Co.</u>, 155 Vt. 44 (1990)).

<u>Authority for and Constitutionality of Municipal Regulation of the "Marina" Use Category in the Residential-2 and Shoreland Overlay Zoning Districts</u>

Appellant argues that the provisions in the Zoning Regulations governing the use category of "marina" exceed the Town's statutory authority, violate the public trust doctrine, and infringe on the public's constitutional right to travel.[7]

---

[7] Appellant's memoranda make the same arguments as to the use category of "residential marine association." However, only the use category of "marina" was cited in the Notice of Violation, making any arguments as to the use category of

6

<u>Statutory Authority</u>

The Town lacks jurisdiction to regulate uses in Lake Champlain; the parties do not dispute this principle. <u>In re Svendsen Dock Extension Variance</u>, No. 1-1-09 Vtec, slip op. at 5, (Vt. Envtl. Ct. October 14, 2009) (Durkin, J.). The Lake is subject only to state and federal regulation, unless the state has delegated authority to a municipality, which it has not done in this instance.[8] <u>Svendsen</u>, No. 1-1-09 Vtec, slip op. at 5. The Town's lack of jurisdiction in Lake Champlain means that it may not regulate the location, number, or nature of the dock, moorings or docking berths maintained in the Lake. <u>Svendsen</u>, No. 1-1-09 Vtec, slip op. at 7.

Although the Town lacks authority to regulate the moorings or dock maintained by Appellant in Lake Champlain, it does have the authority to regulate the use of the shorelands within its boundaries. 24 V.S.A. §§ 4411(a)(1); 4414(1)(D). Specifically, the Town may regulate through its zoning provisions the use of lands within the Shoreland overlay zoning district, including the structures located on them, and may regulate access through such lands to public waters. 24 V.S.A. § 4411(a)(1); see also 24 V.S.A. § 4411(b)(3)(B) (town may use zoning map to regulate, restrict, or prohibit uses at or near natural bodies of water); 24 V.S.A.

---

"residential marine association" beyond the scope of this appeal. The fact that residential marine associations may have been discussed by the DRB is irrelevant, as this appeal is <u>de novo</u> regarding the June 24, 2010 Notice of Violation, applying the substantive standards that were applicable before the DRB. V.R.E.C.P. 5(g); 10 V.S.A. § 8504(h).

[8] See 29 V.S.A. § 401. A delegation of state authority to the Town to regulate moorings in Malletts Bay expired in 1999; neither party has suggested that that delegation has been renewed. See <u>Re: Petition of the Town of Colchester, Malletts Bay, Lake Champlain</u>, Decision No. UPW-91-04, 2-3 (Mar 31, 1993), <u>available</u> <u>at</u> http://www.state.vt.us/nrb/wrp/decisions/upw/index_1991.htm; see also <u>Svendsen</u>, No. 1-1-09 Vtec, slip op. 6 (using <u>Petition of the Town of Colchester</u> as an example of the process by which authority to regulate public waters may be delegated to a municipal authority).

§ 4414(1)(D)(ii) ("Shoreland bylaws . . . may impose other requirements authorized by [24 V.S.A. ch. 117]"); <u>Svendsen</u>, No. 1-1-09 Vtec, slip op. at 6 (town may "regulate shoreland use and reserve access to public waters").[9]

The Town may thus determine which uses are allowed within the Residential-2 zoning district and the Shoreland overlay zoning district, and may require prior conditional use review, 24 V.S.A. § 4414(3), and site plan review, 24 V.S.A. § 4416, for those allowed uses. The Zoning Regulations may restrict and regulate the shore-based features of marinas in the Residential-2 zoning district and the Shoreland overlay zoning district.

The use category of "marina," which may adjoin any type of shore property and which may involve commercial marine-related services and activities, has the potential to be a more intensive use than the use category of "residential marine association," which is restricted to use by the owners of residences in the association and which excludes commercial marina services. In the Residential-2 zoning district, neither marinas nor residential marine associations are listed as permitted uses, that is, neither is eligible for a permit from the Zoning Administrator without prior DRB approval. Table A-1. Marinas are also not allowed as a conditional use in the Residential-2 zoning district, although residential marine associations are allowed as conditional uses in all five of the Residential zoning districts, including the Residential-2 district, as well as in the General Development 1 zoning district. Table A-1.[10] Site plan approval is also required for approval of a marina in any

---

[9] Such regulation of access is analogous to municipal regulation of a property's access to a state highway, which may require municipal site plan approval and a municipal curb cut or access permit, as well as state approval. See 19 V.S.A. § 1111, 24 V.S.A. §§ 4414(3)(A)(iii), 4416.

[10] As contrasted with residential marine associations, marinas are allowed as a conditional use only in the Residential 5, Residential 10, General Development 1, and General Development 4 zoning districts (including the General Development 4

district. § 8.03.

Neither the site plan review standards nor the conditional use review standards regulate the docking or mooring facilities provided by a marina. §§ 8.07, 8.10(E). Thus, because the Zoning Regulations do not regulate the location, quantity, or other aspects of the docking and mooring facilities provided by marinas, they do not exceed the Town's statutory authority; summary judgment is therefore GRANTED to the Town on this issue.

### The Public Trust Doctrine and Equal Protection

The parties also do not dispute that the waters of Lake Champlain are held in trust for the public by the State of Vermont. However, because the Zoning Regulations at issue in this case do not regulate the use of the waters of the Lake or the land lying under those waters, but instead only regulate shore-based uses and structures, the Zoning Regulations do not usurp the state's duties under the public trust doctrine or violate that doctrine.

The definition of marina in the Zoning Regulations does not require individuals to own lakeshore property in order to dock or moor a boat in Lake Champlain, including in Malletts Bay, nor does it prevent anyone from docking or mooring a boat in the Lake.[11] Instead it simply establishes a threshold number of

_____

Commercial overlay district), and marinas qualify as a permitted use only in the Commercial zoning district. Table A-1.

[11] Appellant claims that in a prior decision on an unrelated application, In re: Wiley Searles and Yvonne Zietlow, Findings of Fact & Decision (Town of Colchester Dev. Review Bd. Nov. 12, 2008) (Appellant's Ex. 7), the DRB impermissibly used the Zoning Regulations to restrict access to Lake Champlain by individuals who did not own land along the shore. This DRB decision was not appealed to this Court and therefore became final; it cannot be challenged in this appeal, even indirectly, regardless of whether it was or was not correctly decided. 24 V.S.A. § 4472(d); Levy v. Town of St. Albans, 152 Vt. 139, 142 (1989) (ruling that the statute prevents a

moorings or berths that will require the adjacent parcel of shore land, which provides access to such moorings or berths, to obtain approval from the DRB to operate as a marina.

Accordingly, the Zoning Regulations as to marinas do not violate the public trust doctrine or the constitutional right to equal protection of the law; summary judgment is therefore GRANTED to the Town on this issue.

### Right to Travel

This analysis considers only Appellant's constitutional right to travel, as a litigant may not raise such a claim on behalf of a third party. U.S. Dept. of Labor v. Triplett, 494 U.S. 715, 720 (1990) (quoting Valley Forge Christian College v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 474 (1982)) (litigant may not "rest his claim to relief on the legal rights or interests of third parties").

A regulation infringes on an individual's constitutional right to travel if a primary objective of the regulation is to impede interstate travel, if the regulation deters interstate travel, or if the regulation penalizes the exercise of the right to interstate travel. Selevan v. New York Thruway Authority, 584 F.3d 82, 100 (2009) (citing Attorney General of New York v. Soto-Lopez, 476 U.S. 898, 903 (1986)).

The purpose of the Zoning Regulations, as stated in § 1.01, is the implementation of the municipal plan and the promotion of the health, safety and welfare of the community. No primary objective of the Zoning Regulations seeks to restrict interstate travel in any way.

Because the Zoning Regulations do not condition the use of the Lake or access to the Lake on property ownership or any other factor, they do not deter travel on or

collateral attack on a final zoning decision even if that "decision was void ab initio").

use of the Lake, interstate or otherwise. Appellant may put boats into the water in front of his condominium unit, or may put boats into Lake Champlain at public access points or at permitted private marinas or at an appropriate permitted residential marine association. Although the Zoning Regulations do limit the location of marinas serving five or more boats to certain zoning districts, that limitation does not affect Appellant's right to travel on the Lake. See, e.g., Town of Southhold v. Town of East Hampton, 477 F.3d 38, 54 (2007) (noting that there is no constitutional right to the most convenient form of travel) (internal citations omitted).

Finally, no provisions of the Zoning Regulations either directly or indirectly penalize individuals such as Appellant for exercising their right to travel on Lake Champlain. See Soto-Lopez, 476 U.S. at 904 (describing how residents are indirectly penalized if the timing of their migration to a state causes them to be treated differently from other residents regarding an entitlement such as food stamps or welfare).

Therefore, the regulation of marinas in the Zoning Regulations does not violate or infringe on Appellant's constitutional right to travel on Lake Champlain; summary judgment is GRANTED to the Town on this issue.

Adequacy of Notice of Violation

Appellant argues that he was deprived of due process by the text of the June 24, 2010 Notice of Violation, as well as by the DRB decision.

The Vermont Supreme Court has held that, in order for a notice of violation to satisfy the requirements of due process, the notice must inform the parties receiving it of 1) the factual basis for the violation; 2) the action to be taken against them; and 3) the procedures available to challenge the action. Town of Randolph v. Estate of White, 166 Vt. 280, 284-5 (1997). Appellant argues that the Notice of

11

Violation did not sufficiently inform him of the factual basis for his alleged violation of the Zoning Regulations, and therefore did not sufficiently inform him of what he had to do to cure the violation.

The Notice of Violation in the present case only stated that Appellant was "operating a marina" on his property "without proper permits or approvals" and that this operation was "a violation of Article 12 (p.18) and Table A-1" of the Zoning Regulations. To cure the violation, the Notice of Violation only stated that Appellant "must cease the marina operation." Although the Notice provided copies of page 18 and Table A-1 of the Zoning Regulations (as well as, confusingly, also providing the definition of "residential marine association" not mentioned in the Notice of Violation), it did not provide any specific statements of what activities of Appellant constituted "operating a marina," or what characteristics of his property constituted a "marina," or, most importantly, what he would have to do to "cease the marina operation" and thereby cure the violation.

In particular, the definition of "marina" has two components, either of which is sufficient to bring shoreline property into the use category of "marina." A marina may be property used simply for "access to public waters" for docking or mooring of five or more boats, regardless of whether any services are provided. Or a marina may be a "small-craft harbor complex" providing access to public waters and characterized by various commercial marine services.

Although apparently the violation cited in the Notice of Violation was meant to be the use of Appellant's shoreland property for access to public waters for the docking or mooring of five or more boats, rather than his creation of a small-craft harbor complex with marine services, the Notice of Violation did not state the factual basis for the violation.[12] Moreover, assuming that the cited violation is the

---

[12] From the staff notes and photographs provided by the Planning and Zoning staff

use of some shoreland property to provide access to public waters, neither the Notice of Violation nor the summary judgment materials reveal what path across the condominium property is alleged to be used by persons for that access, from which Appellant or this Court could determine whether it actually involves the limited common elements of Appellant's unit at 1355 East Lakeshore Drive.

Further, the Notice of Violation did not state the number of boats alleged to be present at Appellant's dock. Nor did the Notice of Violation state how the violation could be cured, other than by the circular reasoning that Appellant could cure the violation by "ceas[ing] the marina operation." It is not possible to determine from the text of the Notice of Violation whether the Zoning Administrator was seeking to have Appellant remove a certain number of boats present at any given time; or seeking to have Appellant obtain approval of a residential marine association (recognizing that a marina is not an allowed use in the district); or seeking information regarding whether access across this property for the purpose of docking or mooring a certain number of boats predated the adoption of this provision of the Zoning Regulations; or, indeed, whether there was any other means of curing the alleged violation.[13]

---

to the DRB for its hearing on this appeal, submitted as attachments to the Second Affidavit of Donald Richard filed on January 4, 2011, it is apparent that the Notice of Violation was issued to Appellant after a staff member's observation of "more than four boats and water craft moored and docked in front of the property" during a June 23, 2010 site visit. The staff notes also include a "photograph and photo key submitted to the Planning and Zoning Office" more than a month after the Notice of Violation was issued, "depicting the boats and moorings;" the photo shows the presence of approximately thirteen boats and moorings on or in the vicinity of the dock in front of Appellant's 1355 East Lakeshore Drive property.

[13] By contrast, this Court has held a notice of violation to be adequate that informed the property owner that he was violating a zoning ordinance's provision regulating junkyards "due to the storage of unregistered vehicles and debris without a permit." Town of Waterbury v. Neville, No. 73-4-06 Vtec, slip op. at 1, 3–4 (Vt. Envtl. Ct.

Without either revealing the facts alleged to constitute the violation, or revealing how Appellant could cure the violation, the June 24, 2010 Notice of Violation did not meet the minimum standards for due process as described in Estate of White, 166 Vt. at 284-5. Summary judgment is therefore GRANTED to Appellant on this issue, and the June 24, 2010 Notice of Violation is therefore vacated, concluding this case, without prejudice to the issuance of any future notices of violation. Because the Notice of Violation has been vacated, the Court does not reach the Town's motion for summary judgment that Appellant is in violation of the Zoning Regulations as stated in the Notice of Violation.

Appropriate Party to Receive the Notice of Violation

Appellant also asks that the Notice of Violation be vacated and dismissed on the basis that it is the condominium association, rather than Appellant individually, that owns or controls the land over which access is made to the Lake. Material facts are in dispute preventing this issue from being resolved on summary judgment.

As described in the Declaration of Condominium, the land surrounding Appellant's unit is a limited common element of which Appellant has "exclusive use and possession" down to the "lakefront." Town's Ex. G at 6. Thus, to the extent that anyone obtains access to the waters of the Lake via Appellant's dock or down the stairs near Appellant's 1355 East Lakeshore Drive house, they must travel over Appellant's limited common element to do so. Depending on the route of access

February 1, 2007) (Durkin, J.). Similarly, a notice of violation was adequate that informed the property owner, among other things, that he had "establish[ed] an office in a travel trailer without a permit" and that he had "fail[ed] to comply with the conditions" of a specified permit "in regard to the planting of trees 'so they shield the residents on Water Street from view of the [permitted] buildings.'" Town of Northfield v. Drown, No. 218-10-08 Vtec, slip op. at 5, 7 (Vt. Envtl. Ct. September 4, 2009) (Durkin, J.).

alleged as being used to reach the public waters of the Lake for the mooring or docking of five or more boats, Appellant may be an appropriate party to receive a notice of violation.

On the other hand, material facts are in dispute, or at least have not been provided to the Court, as to whether access to the Lake for the purpose of mooring or docking five or more boats is instead made over common elements of the condominium association. Accordingly, both motions for summary judgment are DENIED on the issue of whether Appellant or the Condominium Association, or both, were the proper parties to be issued the Notice of Violation.

### Adequacy of DRB Proceedings and Decision

Appellant also argues that the DRB proceedings and decision deprived him of due process by discussing the definition of "residential marine association" rather than that of a "marina," and by concluding that he was in violation for operating a "residential marina" rather than a "marina" as stated in the Notice of Violation. Appellant also argues that the DRB decision failed to state a factual basis for its conclusion upholding the Notice of Violation.

When considering an appeal of a DRB decision that is not on the record, the Court holds a de novo hearing on the issues which have been appealed, and applies the substantive standards that were applicable before the DRB. 10 V.S.A. § 8504(h). Nevertheless, even in jurisdictions that are not on the record, DRB decisions must at a minimum comport with 24 V.S.A. § 4464(b)(1). See, e.g., In re Tanguay Storage Unit Project, No. 149-7-09 Vtec, slip op. at 4 (Vt. Envtl. Ct. April 7, 2010) (Wright, J.).

Section 4464(b)(1) requires that the written DRB decision contain "a statement of the factual bases on which the [DRB] has made its conclusions and a statement of the conclusions." The statute allows this requirement to be met by the minutes of the meeting, rather than in a separate written decision, if they contain both the

factual bases and the conclusions related to the relevant review standards. 24 V.S.A. § 4464(b)(1). Because the original Notice of Violation has been vacated for lack of due process, it is not necessary to reach the issue of whether the DRB decision's conflation of the use categories of "marina" and "residential marine association," or its recitation of testimony from the hearing in lieu of its own factual findings, meets the minimum statutory standards of 24 V.S.A. § 4464(b)(1).

Attorney's Fees

Appellant also requests reimbursement of the attorney's fees he has incurred in defending against this notice of violation. The applicable statute makes no provision for attorney's fees, and Appellant has made no showing of any reason to depart from the American Rule for the allocation of attorney's fees in litigation. See Monahan v. GMAC Mortg. Corp., 2005 VT 110, ¶ 76, 179 Vt. 167 (parties bear their own attorney's fees absent a contractual or statutory provision, or exceptional circumstances requiring a deviation from the rule). Appellant's request for reimbursement of attorney's fees is therefore DENIED.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellant's Motion for Summary Judgment is DENIED and summary judgment is GRANTED to the Town that the Zoning Regulations' provisions regulating the use category of "marina" are within the scope of the Town's statutory authority and are constitutional, but that Appellant's Motion for Summary Judgment is GRANTED that the June 24, 2010 Notice of Violation failed to inform Appellant of the factual basis for the violation and of how to cure the violation.

Therefore, the June 24, 2010 Notice of Violation is HEREBY VACATED, without prejudice to the issuance of any future notices of violation, concluding this appeal.

Done at Berlin, Vermont, this 29th day of April, 2010.

_____
Merideth Wright
Environmental Judge