STATE OF VERMONT

SUPERIOR COURT  –  ENVIRONMENTAL DIVISION

|  |  |  |
|---|---|---|
| In re Richard Site Plan Amendment | } | Docket No. 87-5-10 Vtec |

Decision and Order

Appellant-Applicant Donald Richard appealed from a decision of the Development Review Board (DRB) of the Town of Colchester, denying site plan approval for an as-built concrete boat ramp and for partially-built concrete stairs, landing or platform, and associated retaining wall.  Appellant is  represented by John L. Franco, Jr., Esq.; and the Town is  represented by Thomas G. Walsh, Esq. and Annie Dwight, Esq.  Interested Persons Roland and Brenda Pepin have entered an appearance representing themselves.

An evidentiary hearing was held in this matter before Merideth Wright, Environmental Judge.  A site visit was taken in advance of the trial, with the parties and their representatives.  The parties were given the opportunity to submit written memoranda and requests for findings.  Upon consideration of the evidence, as illustrated by the site visit, and of the written memoranda and requests for findings filed by the parties, the Court finds and concludes as follows.

Factual Findings

East Lakeshore Drive runs in a southwesterly to northeasterly direction[1] near the

---

[1]  For ease of reference this decision will use the directional terms southerly and northerly, and will refer to the Lake as being located westerly of the property. Northerly refers to the side of Appellant's property in the direction of its boundary with

subject property at the shoreline of Lake Champlain at Malletts Bay in the Town of Colchester. Three lots or condominium units improved with separate single-family houses, having addresses (from south to north) of 1337, 1342, and 1355 East Lakeshore Drive, as well as what is shown on the site plan as a fourth lot northerly of the other three, are located between East Lakeshore Drive and the shoreline.[2] The parking areas and the houses on the lots are located at the elevation of the roadway (at approximately 116 feet above sea level), between the road and the top of a steep embankment. The embankment slopes steeply down in elevation towards the Lake to approximately the 100-foot elevation above sea level. A sand beach exists between the toe of the steep slope and the waters of the Lake. The lots are each approximately fifty feet deep in useable area at the elevation of the houses above the steep embankment.

William Miller owns the southernmost of the lots or units, at the address of 1337 East Lakeshore Drive. Donald Richard owns the middle developed lot or unit at 1343 East Lakeshore Drive and also owns the next northerly developed lot or unit at 1355 East Lakeshore Drive. The plan sheets for the site plan approved in the 2008 proceeding (the 2008 Approved Site Plan), shows that the houses on the three developed lots are served by on-site septic tanks.

The lot directly northerly of 1355 East Lakeshore Drive, between it and the Pepins' property at 1361 East Lakeshore Drive, contains a wastewater disposal field. The boat ramp at issue in this appeal is located on the northernmost side of that lot,

_____

the Pepins' property, although some testimony and argument has used the term "east" to refer to this direction.

[2] The condominium ownership or unit owner control of the property is not at issue in this appeal. For ease of reference this decision will refer to the land associated with each address as a "lot," rather than using the term "limited common elements." The condominium declaration submitted in connection with the summary judgment motions in a case involving the same condominium development, In re Richard Notice of Violation, No. 151-9-10 Vtec, shows that each condominium unit has associated land, down to the lakeshore, assigned to it as its limited common elements.

adjacent to the Pepins' property.[3]  Although the sewer lines are not clear from the plans submitted in the present case, no other wastewater disposal area is shown on the plans and it appears that the three houses may all use the wastewater disposal field on the northernmost lot.  In the original 2007 application for site plan review of the whole project, including the boat ramp on the northernmost lot, Donald Richard characterized himself as the applicant and the application showed both Donald Richard and William Miller as the "owner of record."  However, the associated report from Champlain Consulting Engineers, dated June 3, 2008, referred to the boat ramp as a "lake access" planned "on the [north]eastern edge of the 1355 East Lakeshore Drive property."  On the 2010 amendment application that is the subject of the present appeal, Donald Richard signed both as the applicant and as the property owner, although he also listed David and Mary Richard as owners of record.

The 2007 application requested site plan review of a project at 1337 and 1355 East Lakeshore Drive, on either side of the lot at 1343 East Lakeshore Drive.  The project description section of the application form described the project as a retaining wall, stairs, and a lake ramp, "to stabilize embankment and road."  The associated report from Champlain Consulting Engineers, dated June 3, 2008,  described the project as approximately 140 feet of seawall in front of 1355 East Lakeshore Drive, and approximately 30 feet of concrete seawall in front of the Miller unit at 1337 East Lakeshore Drive.[4]

The original project proposed to establish concrete retaining walls or seawalls on the lake side of each of the two lots, matching up with an existing retaining wall or seawall already installed on the 1343 East Lakeshore Drive lot also owned by Donald Richard.  The project was granted site plan approval by the DRB on June 11, 2008 (the

---

[3]  See note 1, above.
[4]  The work proposed for the William Miller lot at 1337 East Lakeshore Drive is not at issue in the present appeal.

2008 Approval), including a finding of the need for the project, and received Permit No. SP-08-20.

With respect to the 1355 East Lakeshore Drive property, the 2008 Approval allowed Appellant to replace an existing gabion retaining wall with a concrete retaining wall or seawall. The 2008 Approval provided for the lower portion of an existing straight run of wooden stairs[5] to be replaced by concrete stairs extending through and constructed as an integral part of the seawall. The 2008 Approval also allowed the construction of a concrete boat ramp, integral with and extending to the seawall, sloping down from the westerly edge of an existing parking area down onto the beach, along the northerly side of the property adjacent to the Pepins' property. A concrete retaining wall on the southerly side of the boat ramp was designed to retain the slope of Appellant's property; a concrete retaining wall on the northerly side of the boat ramp was designed to retain the slope or side of the Pepins' property. The slope of the boat ramp itself also functioned to retain the slope beneath it. The existing flat parking area extended westerly approximately 20 feet by scale from the property boundary at East Lakeshore Drive; the proposed flat parking area also extended westerly approximately 20 feet by scale from the roadside property boundary, although it was proposed to be slightly wider and to be repaved.

The seawall project was constructed. However, two elements of the project as constructed differed markedly from the plans as approved in the 2008 Approval.

As constructed, the concrete stairs extending through and integrated with the seawall are located approximately 14 feet farther to the north than in the 2008 Approval. Because this integral concrete seawall stairway is approximately 14 feet farther to the

---

[5]  The existing stairway incorporated a small landing, the same width as the stairs, about halfway up the slope. In addition, two seating areas with built-in benches, each about the same width as the existing stairway, extended out on either side of the existing stairway at a height of six or seven steps up from the beach.

4

north than the approved stairway, Appellants designed and partially constructed an approximately 18'9" long[6] and 4' wide horizontal concrete platform part way up the slope, consisting of a landing at the top of the integral concrete seawall stairway, a horizontal connecting section, and a landing at the bottom of the remaining segment of existing wooden stairway that leads up to the level of the parking area. This new horizontal concrete platform connects the integral concrete seawall stairway with the existing run of wooden stairs. Appellants characterize this horizontal platform as a landing; the Town argues that it is large enough to function as a deck. It increases the useable space on Appellant's property. As constructed, with the concrete platform connecting the two segments of stairway, the project now also requires a new, 3-foot-high concrete retaining wall (the mid-slope retaining wall) to prevent the hillside from collapsing onto the horizontal concrete platform. This mid-slope retaining wall is approximately 15 feet in length, by scale from Appellant's Ex. 1, located easterly of the horizontal concrete platform, extending from behind the landing at the top of the integral concrete seawall stairway along the horizontal connecting section to the existing wooden stairway. Appellant's engineer testified that the new mid-slope retaining wall could be landscaped to minimize its appearance when viewed from the Lake, but no landscaping plan was provided to the Court in connection with this application.

As constructed, the boat ramp and its associated level parking area at the elevation of the roadway also differ from the boat ramp approved in the 2008 Approval. As approved, the level parking area at the elevation of the roadway was proposed to be 18 feet in width, and to extend approximately 20 feet by scale towards the Lake from

[6] As measured by scale from the as-built drawing submitted with the amendment application now before the Court, Appellant's Ex. 1. The Town's memorandum referring to a six-foot-long platform and an associated six-foot-long retaining wall does not appear to account for the entire length of the platform as designed, and for which Appellant seeks approval in this proceeding.

the roadside property boundary.  As constructed, the level parking area at the elevation of the roadway is a little over 20 feet in width, and extends 30 feet by scale towards the Lake from the roadside property boundary.  This change increased the flat useable space on Appellant's property in this location from approximately 360 square feet to approximately 600 square feet.  As constructed, the sloping portion of the boat ramp therefore extends 10 additional feet towards the Lake beyond the seawall, and beyond the toe of the slope.  Although the as-built boat ramp is approximately the same width as approved in the 2008 Approval, it is located approximately 10 feet from the Pepin property boundary rather than approximately 2½ feet as approved.  This change resulted in an additional short segment of retaining wall parallel to the road, providing a protected parking area as may be seen in the photographs in Appellant's Exhibits 10 and 11.  The retaining wall segments integral to the northerly side of the boat ramp and parking area, as constructed, retain the portion of the slope on Appellant's property adjacent to the Pepins' property, and also serve to protect the slope and septic system on the Pepins' property.

In January, 2010,  applicant applied for DRB approval of the as-built elements of the project that differed from the project as approved.  The present appeal was taken from the DRB's denial of that approval.

Applicable Regulations

The project is located in the Shoreland overlay zoning district.  § 7.03.  The Zoning Regulations in effect at the time of the original 2008 application were those labeled "Supplement 19."  The Zoning Regulations in effect at the time of the January 2010 application that is the subject of this appeal are those labeled "Supplement 21."  Even though the 2010 application is for an as-built amendment to the 2008 project, the applicable regulations are those in effect at the time the actual amendment application was filed.

The text of §§ 7.03A through 7.03E is identical between the two versions of the Zoning Regulations, as is the text of subsections 1, 3, and 5–9 of § 7.03F. The differences in text between the two versions found in § 7.03F(2) involves existing natural shoreline vegetation and is not at issue in this appeal. The differences in text between the two versions found in § 7.03F(4) will be discussed, if and as necessary, in this decision.

The following three use categories are relevant to the present appeal. The use category of "boat launching ramps" (§ 7.03C(7)) is listed as a separate permitted use category in the Shoreland overlay zoning district. The use category of "seawalls, retaining walls and similar structures detached from and not an integral part of a building" (§ 7.03C(8)) is listed as a separate permitted use category in the Shoreland overlay zoning district. The use category of "stairs and associated landings detached from and not an integral part of a building" (§ 7.03C(10)) is also listed as a separate permitted use category in the Shoreland overlay zoning district. Uses falling into each of these three use categories may be approved by the zoning administrator without having to undergo conditional use review before the DRB.

Within 100 feet inland of the mean water mark, all proposals for structures also require site plan review under § 7.03F(3), except for those uses listed in § 7.03C(4), (5), (9), and (10). Thus, the boat launching ramp, all the retaining walls associated with it, any alterations to the original seawall (including moving the location of the integral concrete stairs within the seawall), as well as the new separate section of retaining wall required by the relocation of the stairs and landing, all require site plan review under § 7.03F(3).[7] All of these elements of the project require site plan review under § 7.03F(3) regardless of whether § 7.03F(4) also applies to any of those features.

---

[7] Ordinarily, detached stairs and landings (§ 7.03C(10)) are exempt from site plan review under § 7.03F(3). However, the new horizontal concrete platform connecting the two stairways is integral to the new mid-slope retaining wall, which is a structure falling under the use category of § 7.03C(8) (seawalls, retaining walls, and similar structures).

In addition, §§ 7.03F(6) and (7) impose specific requirements regulating stairs and landings in the Shoreland overlay district, including that landings not exceed the minimum required by the building codes. At the time of the 2008 Approval, a guidance document issued under the direction of the Zoning Administrator was in effect, stating that landings or platforms may not exceed 44 inches in width and 48 inches in length, and that decks are prohibited. This guidance document was not adopted as or incorporated in the zoning ordinance.

Under § 7.03F(4), additional specific requirements apply to "seawalls and similar structures" in the permitted use category covered by § 7.03C(8). Subsection 7.03F(4)(a) includes a requirement that the applicant show the need for the structure, and states that "expansion of useable property shall not constitute need." Subsection 7.03F(4)(c) includes a requirement that "the structure shall be scaled to meet the need and not larger than structurally required," and states that, to the extent structurally feasible, the structure shall follow the existing contour of the shoreline and be located along the toe of the slope.

Constitutionality

Appellant argues that the regulation's requirement to prove need and the regulation's requirement not to construct beyond the toe of the slope if "structurally feasible," if applied to the boat ramp, unconstitutionally burdens the constitutional right to travel on interstate waters.[8] However, these regulations only govern the

---

[8] The regulation only requires a showing of need for seawalls and similar structures within the use category found in § 7.03C(8). Even aside from the argument that this particular boat ramp is integral to the seawall project, this particular boat ramp also functions as a retaining wall for the slope behind it, and is integral to the retaining wall along the Pepins' property. Nevertheless, the finding of need for the seawall and boat ramp project as a whole was made in 2008 and is not at issue in this appeal. The only

configuration of this particular access to the waters of Lake Champlain. They are no more unconstitutional than is the regulation of a property's access onto a state highway, and thence to an interstate highway. Such access may require both state and municipal approval without impeding the property owner's constitutional right to travel. See 19 V.S.A. § 1111(a),(b).

As discussed in In re Richard NOV, No. 151-9-10 Vtec (Vt. Super. Ct. Envtl. Div., Apr. 29, 2011) involving a different issue with regard to this same property, Appellant may only raise a claim as to his own constitutional right to travel;

> a litigant may not raise such a claim on behalf of a third party. U.S. Dept. of Labor v. Triplett, 494 U.S. 715, 720 (1990) (quoting Valley Forge Christian College v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 474 (1982)) (litigant may not "rest his claim to relief on the legal rights or interests of third parties").

> A regulation infringes on an individual's constitutional right to travel if a primary objective of the regulation is to impede interstate travel, if the regulation deters interstate travel, or if the regulation penalizes the exercise of the right to interstate travel. Selevan v. New York Thruway Authority, 584 F.3d 82, 100 (2009) (citing Attorney General of New York v. Soto-Lopez, 476 U.S. 898, 903 (1986)).

Richard NOV, No. 151-9-10 Vtec, slip op. at 10.

The purpose of the Zoning Regulations as a whole, as stated in § 1.01, is the implementation of the municipal plan and the promotion of the health, safety and welfare of the community; their stated purposes do not restrict interstate travel in any way.

The regulation requiring that Appellant prove the need for the retaining wall features of the project does not deter travel on or use of the Lake. The regulation requiring that the boat ramp, functioning to retain the slope, not extend beyond the toe of the slope if structurally feasible, does not affect Appellant's right to travel on the

issue here is whether the as-built alterations to the project meet the requirements of the regulations.

9

Lake. See, e.g., <u>Richard NOV</u>, No. 151-9-10 Vtec, slip op. at 11, (citing <u>Town of Southhold v. Town of East Hampton</u>, 477 F.3d 38, 54 (2007) (noting that there is no constitutional right to the most convenient form of travel) (internal citations omitted)).

Finally, neither a requirement to show the need for the project as a whole, nor a requirement that the structure not extend beyond the toe of the slope, either directly or indirectly penalizes Appellant for exercising his right to travel on Lake Champlain. See <u>Soto-Lopez</u>, 476 U.S. at 904 (describing how residents are indirectly penalized if the timing of their migration to a state causes them to be treated differently from other residents regarding an entitlement such as food stamps or welfare). Therefore, the regulation under § 7.03F(4) of the concrete boat ramp does not violate or infringe on Appellant's constitutional right to travel on Lake Champlain.

<u>Stairs, Horizontal Platform, and Mid-Slope Retaining Wall</u>

The integral concrete seawall stairway in the location approved in the 2008 Approval was integral to the seawall retaining wall, and was covered by the finding of need for the seawall. Its design eliminated two small seating areas extending beyond the sides of the stairs close to the foot of the stairs. Although the approved integral concrete seawall stairway did not follow existing contour lines, because it replaced the lower portion of the existing wooden stairs, its location minimized any new backfill and land disturbance, § 7.03F(6), in areas already disturbed by the existing wooden stairs. The 2008 Approval necessarily determined that the approved integral concrete seawall stairway met §§ 7.03F(6) and (7).

Appellant argues that the location was changed so that the integral concrete seawall stairway could meet the building code requirements for stairways, which require a landing at each twelve feet of height, and require a certain maximum

10

steepness or rise over run.[9]  However, the building code does not apply to single-family detached houses, even those such as Appellant's held in condominium ownership.  The integral concrete seawall stairway therefore could have been built in the approved location without violating any applicable building code.

Even if the building code were applicable to this single-family residence, requiring the integral concrete seawall stairway to be connected to the continuation of the wooden stairs by a level landing, the integral concrete seawall stairway could have been moved to a location immediately adjacent to its approved location, so as to provide the minimum size of landing structurally required to meet the need. § 7.03F(4)(c).

Moreover, the new mid-slope retaining wall and its associated horizontal platform themselves require approval under the standards in § 7.03F(4), and do not meet those standards.  Appellant has not proved the need for the new mid-slope retaining wall, as it is only required by the excessive 14-foot distance between the new location of the integral concrete seawall stairway and the existing wooden stairs.  If the stairway had been built as approved, no mid-slope retaining wall would have been required at all.  Even if the two stairway segments had been required to be offset due to the building code, only a short retaining wall upslope of the landing for the integral concrete seawall stairway would have been necessary.  Therefore, as built, the new mid-slope retaining wall and its associated horizontal concrete platform are larger than structurally required and fail to meet the standards in § 7.03F(4)(c).  The total area of the new horizontal platform expands Appellant's useable property, which does not constitute need.  § 7.03F(4)(a).

Accordingly, approval of the new location for the integral concrete seawall stairway (in relation to the location of the existing upper segment of wooden stairs),

_____

[9]  No copy of a building code was provided in evidence.

11

approval of the new horizontal concrete platform, and approval of the new mid-slope retaining wall are DENIED.[10]

Boat Ramp and Parking Area Expansion

The boat ramp is both integral to its side retaining walls, and also to the seawall as originally proposed. It also functions as a retaining wall itself with respect to the hillside behind it. It is therefore regulated under § 7.03F(4), as well as requiring site plan approval under § 7.03F(3).[11]

The changes to the approved project consisting of moving the boat ramp and its associated side retaining walls southerly, away from the Pepins' property, are APPROVED. Appellant showed that those changes were necessary to avoid potential damage to the Pepins' septic system and possibly to a tree to be retained on the Pepins' property. The additional two feet of width of the flat parking area obtained due to this shift is incidental to that change and not for the purpose of expanding the useable area of the property.

On the other hand, the changes to the approved project consisting of creating an additional ten feet of flat parking area to the west of the originally existing parking area, and consequently moving the toe of the boat ramp ten feet closer to the Lake, extending the boat ramp beyond the toe of the slope and beyond the seawall project, are DENIED.

[10]   This is not an enforcement case. Any issues as to whether the as-built changes would or could have been approved at the time of the 2008 Approval, and any remedial requests regarding the as-built changes, are beyond the scope of this case. This denial does not preclude an application to move the wooden stairs into alignment with the as-built location of the integral concrete seawall stairway, and does not require or preclude any particular remedial action on the part of Appellant.
[11]   Appellant is correct that a boat ramp, in and of itself, falls under a different use category not referenced in § 7.03F(4). This boat ramp is therefore only regulated under § 7.03F(4) to the extent that it functions as or is integral to a seawall, retaining wall, or similar structure.

12

The expansion of the useable parking area does not constitute need. The boat ramp and its associated side retaining walls could have been constructed as approved, without the extension of the toe of the boat ramp, making the extension larger than structurally required.

Importantly, the boat ramp allows stormwater to flow down to the Lake from the elevation of East Lakeshore Drive. Section 7.03F(5)(b) requires that the the boat ramp, like any shore-based facility, not "adversely affect water quality." The extension of the ramp ten feet closer to the Lake will have a more adverse effect on water quality because the ramp as built drains a larger area, and any runoff will enter the Lake with less attenuation or treatment from flowing across the beach. Appellant has proposed no changes to the flat parking area above the boat ramp to change the flow or velocity of such runoff to mitigate the adverse effects of the additional ten feet of extension.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that:

1) approval of the concrete stairs integral to the seawall is DENIED in their as-built location in relation to the location of the connecting segment of existing wooden stairs;

2) approval of the new 18' x 4' horizontal platform and its associated new mid-slope retaining wall is DENIED;

3) approval of the changes to the boat ramp and its associated side retaining walls is DENIED with respect to the expansion of the flat parking area ten feet farther to the west and with respect to extension of the boat ramp ten feet farther to the west (closer to the Lake), but approval of the changes to the boat ramp and its associated side retaining walls is

13

GRANTED with respect to shifting the location of the boat ramp southerly, away from the Pepins' boundary line.

Done at Berlin, Vermont, this 17th day of June, 2011.

_____
                Merideth Wright
                Environmental Judge